Hubbard, J.
By the will of James Marcy, under whom both the parties claim, either as heirs or devisees, the fifteen *366 acres of land, the subject of the present controversy, are given to his widow for her life: To his son Uriah is given half his farm, including the half of his wife’s dower in his real estate, after her death; and to his son Elisha the other half. And he directs that his farm, including his wife’s part, shall be equally divided between his said sons. The widow went into possession of the fifteen acres after his death. To affect, then, the right of the demandant, by the parol partition (which has been proved) of the farm devised, the tenant, who claims under the conveyance from Uriah, must show that the fifteen acres of land, called the widow’s dower, but in fact devised to her for life, and probably intended to be in lieu of dower, was included in that partition. But this he has failed to do; and it is therefore unnecessary for us to determine, in this case, what title has been acquired by the parties, in consequence of the parol partition ; whether they are still tenants in common, as the tenant now contends, or whether they own in severalty, having had a several possession, claiming title, for nearly forty years.
Viewing the case, then, independently of the parol partition, is the demandant entitled to an undivided half of the fifteen acres, as demanded by him ? And if so entitled, has he been disseized by the tenant ? The demandant’s title is derived from the will of his father; and to the introduction of the will, to maintain his action, it is objected that it ought not to be admitted in evidence, on the ground that it was not duly proved at the probate court, and so cannot be offered in support of title. To sustain this objection, it is urged that there was no sufficient notice to the parties interested in the estate; and also that the fact of notice should appear in the decree. The notice, which appears on the original will, is as follows: “ Northampton, June 24th 1800. We heard the executor to the foregoing will notify the heirs and legatees, that he should" offer the will for probate on this day. Ebenezer Morse. Benjamin Reeve.” The persons who sign this certificate appear to have been two of the witnesses to the will; and we may believe they lived in the same town with the testator, and had come to Northampton for the purpose of proving the execution and publication of the *367 will, and were therefore selected as witnesses of the fact of notice to the parties interested in the estate. In regard to the sufficiency of this notice, it is to be observed, that the statutes touching the probate of wills and granting letters of administration, have prescribed no form of notice for the parties to pursue, and it is left, therefore, in the discretion of the judge, to whose jurisdiction the subject appertains.
■ So early as 1649, it was provided, that if executors renounce, or if “ none of the friends or kindred of the deceased party, that shall die intestate, shall seek for administration of such person’s estate, then the clerk of the writs of such town, where any such person shall die, shall, within one month after his decease, give notice to the court of that county to which such town doth belong, of such renouncing of executorship, or not seeking of administration, that so the court may take such order therein as they shall think meet.” Anc. Chart. 204. Here was a provision for notice, where no one made application for administration of the estate, but no provision as to the manner of notifying heirs and persons interested, on making application for administration. And in 1692, there was a provision, that no nuncupative will should be at any time received to be proved, “ unless process have first issued to call in the widow or next of kindred to the deceased,” if resident within the government, “ to the end they may contest the same, if they please.” Anc. Chart. 235. And this was reenacted, after the adoption of the constitution, by St. 1783, c. 24, <§> 4. And so by St. 1785, c. 12, <§> 3, where witnesses to a will lived more than 30 miles from the place of probate, or were unable to attend, from age or indisposition, the court of probate had power to issue a commission to take their testimony; “ provided always, however, before the probate of any will shall be allowed from the evidence of affidavits, such proceedings shall be had, in all respects, as in this act are provided respecting wills previously proved and allowed in a court of probate without this Commonwealth ; ” in which last case, notice was directed to be given in some public newspaper, three weeks successively, 30 days at least before the time assigned, to the end that any person might *368 appear and show cause against the filing and recording of the same. Here it will be perceived, that while provision was made for notifying persons interested, before probate of a will, in the two specified cases, yet in the ordinary and common cases of probate of wills and granting administration, no enactments were made; but the whole subject of notice was left to the discretion of the judge, in the cases as they arose. And probably the mode of giving notice, in many parts of the Commonwealth where newspapers were published, had assumed the form prescribed by this statute in relation to the probate of foreign wills. The object in view was notice to the parties interested, and not the form of the notice; and if the judge of probate was satisfied as to the notice actually given, the law was answered ; and if any party had cause of complaint in regard to the probate, provision was made for an appeal from the judge’s decree. St. 1783, c. 46, $ 4.
In the present case, the judge of probate had witnesses before him as to the due execution of the will, and who certified on the will, if they did not also swear to the fact before him, the actual notice given to the heirs and legatees; and we think it was a matter within his discretion to judge of the sufficiency of the notice. And no appeal having been taken from his decree, it is not now open to the parties to contest the sufficiency of the notice.
It is said that the notice, to give it validity, and to authorize the reading of the will itself in evidence, should have been recorded ; and in support of this point, the case of Chase v. Hathaway, 14 Mass. 227, is cited, in which the court say, “ a court of probate, although not technically a court of record, ought to have a perfect record of all its orders and decrees ; and it was for this purpose, principally, that the constitution established the office of register. Orders of notice, among other things, should be recorded ; or, if not, should be filed, with the return upon them; and in all important decrees, if previous notice has been given, the fact should be recited in the decree : ” And the court further say, “ it is the more important that this should be attended to in the probate offices; as any *369 material defect will render the proceedings null at any period, when they shall be brought in question; it having been determined that orders and decrees of those courts may be avoided by plea; they not being, like judgments at common law, reversible by writ of error.” But while the positions here advanced are entitled to the greatest respect, yet they cannot be applied to overthrow wills long before proved agreeably to ancient usage, though the notices, previous to their approval, have not been filed or recorded. It was not the usage of the court, in the county of Hampshire, to record or preserve such notices; and at such a distance of time as the present case presents, it would bo unreasonable to hold a party bound to produce evidence of the minute parts of the proceedings. Symonds v. Kimball, 3 Mass. 299. So early as 1639, in an “act for keeping records of judgments and evidence,” it was enacted, “ that there be records kept of all wills, administrations and inventories; as also of the days of every marriage, birth and death of every person within this jurisdiction.” Anc. Chart. 43. But here was no provision for recording the notice to parties prior to the probate of the will or of granting administration on an intestate estate; nor afterwards, except as before mentioned. In the present case, however, there was a filing of the evidence, and the minutes existing constitute a record of the fact of notice.
It is then objected, that the judge’s certificate on the original will was not signed, which furnishes evidence, it is argued, that the proof of the will was never completed. On inspection of this certificate, it is evident that the practice in the county was, to make the decree of probate of the will the letter testamentary also ; so that by giving the executor a copy of the will, and the certificate of probate, he was also furnished with the evidence of his appointment. And we see nothing improper or inconvenient in this practice. It answers all the purpose intended by granting letters testamentary after probate of the will. In the present case, a bond having been given by the executor, as appears by the files, and appraisers appointed on the estate, who returned their inventory, which was proved before the judge of probate, under his hand, and ordered to be, and in fact *370 was, recorded, we are of opinion they are admissible as evidence of the proof of the will to the satisfaction of the judge of probate, and that his omission to put his name to the certificate of probate was by mistake, and not by design. And though it is safe and wise for the judge of probate to sign all papers which pass from under his hands, yet there is no statute provision specially requiring such signature, or making an act void for want of it. And the record of the instrument, and the certificate of the register, are legal evidence of the decree of the judge, though liable to be impeached, if there is mistake or fraud in the record.
But it is objected, that if there is doubt about the probate of the will in this case, then the court decide a matter of fact, in making it sufficient proof; and that it should have been left to the jury to say whether there was actual probate of the will. But this objection is untenable ; for the only ruling in the case was, that the papers were admissible to be read to the jury, as furnishing evidence from which they might justly infer the probate of the will; and the party afterwards made no request to have the jury render their verdict upon the sufficiency of the evidence. And it would, in our opinion, have been plenary evidence with the jury, to establish the will. The court say, in Shumway v. Holbrook, 1 Pick. 117, “a will may be proved in the probate office at any time, in order to establish a title to real estate.” And on evidence like the present, it would be the duty of the probate court to establish the will, if, for want of form, the probate should have been considered so defective that the will had been rejected as evidence in its present state. But we are of opinion that the will was duly proved at the time, and acquiesced in by the devisees and children of the testator, who have held under it to this day; and that it cannot now be impeached in consequence of any existing defects, as to the mode of proof, appearing on the probate files and records.
The remaining question to be considered is, whether the demandant has been disseized. The tenant contends that the brothers, Elisha and Uriah, being tenants in common, the conveyance by Uriah to David, although with warranty, is void as against the other cotenant, and so the grantee is not a disseizor, *371 because he has a right under one tenant. But this is virtually assuming the point in question. And though it is a general and perfectly well settled principle, that the seizin of one tenant in common is the seizin of all, as they hold per mie & per tout, still it has been determined, upon great authority, and by repeated decisions of this court, that one tenant in common may disseize his cotenant. In Doe v. Prosser, Cowp. 218, it was held that “the possession of one tenant in common, eo nomine, as tenant in common, can never bar his companion; because such possession is not adverse to the right of his companion, but in support of their common title; and by paying him his share, he acknowledges him cotenant. Nor, indeed, is a refusal to pay, of itself, sufficient, without denying his title. But if, upon demand by the cotenant of his moiety, the other denies to pay, and denies his title, saying he claims the whole, and will not pay, and continues in possession; such possession is adverse and ouster enough.” In Shumway v. Holbrook, 1 Pick. 117, the court say, “ where a person enters generally, without making any declaration of his intention, the law presumes that he enters by his legal title; but if he says that he enters to exclude others having the same title with himself, or if he does an act showing an intention to keep them out, he is an abator, as much as a stranger would be.” So in an early case of Gordon v. Pearson, 1 Mass. 323, the marginal note, as deduced from the opinion, is, that one tenant in common hindering the entry of another is an ouster. So in Bigelow v. Jones, 10 Pick. 161, where the owner of an undivided part of a parcel of land gave a deed of the whole parcel, and the grantee entered under the deed, and afterwards a creditor of the grantee levied upon the whole parcel, and entered under his levy, claiming to be sole owner of the land, it was held that the cotenant of the maker of the deed was disseized. See also Kittredge v. Locks and Canals, 17 Pick. 247. Vandyck v. Van Beuren, 1 Caines, 84.
In the case at bar, the cotenant Uriah, in Sept. 1832, conveyed the half of the land occupied by him, including the demanded premises, to the tenant, with warranty, and the tenant entered, claiming title under the deed. The widow died in *372 1838, and in March 1839, the demandant claimed of the tenant his share of the demanded premises, and requested the tenant to yield it up. But the tenant refused, and declared that he would stand a lawsuit first. We think, upon the authority of the cases cited, this was an ouster of the demandant, and that he can well maintain this action. So also, by pleading nul disseizin, the tenant admits the fact of disseizin, and puts the title in issue.
But it has been argued, that the whole farm still lies in common, if any title accrued under James Marcy’s will, and that the tenant is in possession of that part assigned to Uriah under the parol partition; or, if not, the tenant is in by consent of the cotenant, and therefore not by disseizin; and that the doc trine of disseizin by election does not apply, which is only permitted for the sake of giving a remedy. And it is also argued by the tenant’s counsel, that it is necessary for the demandant to show affirmatively that these 15 acres were not included in the parol partition, and that, failing to do so, no action will lie for this particular portion of the undivided estate, any more than for the half part of each separate acre of the farm. But we are of opinion, as before intimated, that it is incumbent upon the tenant, if he would avail himself of the fact, to show that the 15 acres were included in the parol partition; and this he had an opportunity to do at the trial, before the jury. It did not appear, however, by the evidence there introduced, that they were embraced in that partition. The case stands, then, upon the facts as proved; that the father gave the 15 acres of land (including in his gift also, a part of the messuage) to his widow for life, and his farm to his two sons, Elisha and Uriah, to be divided equally between them, and the 15 acres, after the death of the mother, to be in like manner divided; and that the widow took possession of the estate devised to her, and made nc claim for dower. It also appears, that these 15 acres were sepa rated by the testator, by metes and bounds, from the residue of the farm. And we are of opinion that whatever may be tne legal effect of the parol partition of the residue of the farm, by the lapse pf time and other circumstances, yet that these 15 acres remained as an estate in common between the brothers, during *373 the life of the widow"; and that the conveyance of the wnole in fee to the tenant by Uriah, though it might be a disseizin of the tenant for life, did not affect the demandant’s right during the life time of the widow; and that on her death, he had a right of entry. In Wallingford v. Hearl, 15 Mass. 471, the court determined that where a tenant for life is disseized, and the disseizor and his heirs continue in possession 40 years, and until the death of tenant for life, the reversioner’s right of entry commenced at the death of tenant for life. And the same doctrine was maintained in the previous case of Wells v. Prince, 9 Mass. 508.
In accordance with these views, we are of opinion that the demandant had a remainder in an undivided moiety of the 15 acres of land demanded; that, on the death of the tenant for life, he became entitled to the possession; and that the act of the tenant, being in under a warranty deed and claiming title to the whole, in resisting the demandant’s right of entry, was a sufficient ouster to enable him to maintain this action. For these reasons, there must be

Judgment on the verdict.