JOHN LEE

*v.*

JAMES M. RUGGLES.

1. TAXATION—*who may levy.* Where commissioners were appointed, by act of the legislature, to levy special taxes upon certain lands for the purpose of drainage, and the act provided that the same should be submitted to a vote of the legal voters of the district to be drained, owning or occupying lands within the same, and that, unless adopted, it should be of no force, if the act is adopted by vote, as required, such commissioners may be regarded as corporate authorities under the constitution of 1848, and might be vested with power to assess and collect taxes for corporate purposes.

2. SAME—*equality and uniformity.* Where special taxes are levied, not upon the valuation of the lands assessed, nor confined to the special benefits conferred by the proposed improvement for which they were authorized, it will be a violation of the principles of equality and uniformity required by the constitution, and the taxes will be illegal.

·3. SAME. So, where, by a special act of the legislature, passed in 1859, a special tax was authorized to be levied upon certain lands for draining the same, and three commissioners were appointed to carry out the object of the act; and two other persons named in the act, with such other disinterested person as they might associate with them, were appointed to classify the lands into three classes, so that the tracts to be most benefited by the drainage should be placed in the first class, and those least benefited in the third class, and return such classification to the commissioners; and it was made the duty of the latter to levy upon the lands described a tax sufficient to complete the drainage of the same, the first class paying the highest rate on the county assessor's assessment, not exceeding fifty cents per acre, the second class to be such a percentage on said assessment, not, however, to exceed forty cents per acre, and the third class in the same way, the rate, however, not to exceed thirty cents per acre: *Held,* that taxes levied under such act were illegal, for the reason that a sufficient sum was required to be

levied upon the lands to complete their drainage, not exceeding fifty, forty, and thirty cents per acre in the respective classes, without any regard to whether the lands were benefited to the extent of the tax or not.

4. SAME. A tax assessed upon the basis of dividing the lands into three classes according to the difference in benefits, fixing a maximum rate of taxation in each class, and making an arbitrary difference of ten cents per acre in the different classes respectively, is not a tax assessed upon each tract only to the extent of the special benefits conferred upon it.

5. CHANCERY JURISDICTION—*cloud on title.* A court of equity will entertain jurisdiction of a bill by the owner of land who is in possession, to remove a cloud upon his title consisting of an illegal tax deed obtained upon it. .

6. BILL TO REMOVE CLOUD—*tender.* On bill to set aside a tax deed on complainant's land, on the ground that the taxes for which the land was sold were illegally assessed for drainage purposes, and the deed was a cloud upon the title, it was objected that the bill should have offered to refund to the defendant the taxes discharged by him in his purchase: *Held,* that, as it appeared the taxes were illegal, and no charge upon the land, and it did not appear by the bill that any benefit had been bestowed upon the land by drainage, or otherwise, the defendant had no equitable claim to have the taxes paid by him refunded.

APPEAL from the Circuit Court of Mason County; the Hon. CHARLES TURNER, Judge, presiding.

The Circuit Court sustained a demurrer to complainant's bill and dismissed the same.

Messrs. DEARBORN & CAMPBELL, for the appellant.

Messrs. LACEY & WALLACE, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity filed by the appellant, John Lee, to remove a cloud upon his title to a certain tract of land in Mason County, by reason of a tax deed, claimed to have been illegally made by the sheriff of said county for the land, in default of payment of two drainage taxes assessed upon it.

By an act of the legislature, approved February 24, 1859, it

was provided that, in addition to the State and county tax there should be levied and collected, in the year 1859, a sufficient special tax for draining the same, on certain lands within the county of Mason, which were particularly described by their numbers, among which was embraced the tract in question. Three persons named in the act were appointed commissioners for carrying out the purpose of the act.

Two other persons named in the act, with such other disinterested person as they might associate with them, were appointed to classify the lands so described, placing the portion most to be benefited by drainage in the first class, and the least to be benefited in the third class, and return the classification to the commissioners; and it was made the duty of the latter to levy upon the lands described a sufficient tax to complete the drainage of the same, the tax to be levied according to the classification, the first class paying the highest rate of taxation, and to be a percentage on the assessment of the county assessor for the year 1859, and in no case exceeding fifty cents per acre. The second class to be such a percentage on said assessment as should in no case exceed forty cents per acre, and the third class to be at such rate as should not in any case exceed thirty cents per acre.

By another act passed February 16, 1865, entitled "An act to revive an act relating to certain lands in Mason County," an additional tax was authorized to be so assessed for the year 1865, which, with the delinquent tax of 1859, was to be entered upon the collector's book for 1865, and collected as other State and county taxes.

It was for the satisfaction of these two taxes, levied upon the land under the authority of the above acts, that the sale was had and the tax deed made.

A demurrer to the bill was sustained, and the complainant appealed.

It is insisted, on the part of appellant, that the present case is governed by those of *Harward* v. *The St. Clair Drainage Co.*, 51 Ill. 130, and *Hessler* v. *Drainage Commissioners*, 53 Ill. 106, where it was held, that a levy of a tax by commis-

sioners similarly appointed, and for a like purpose, was invalid under the provision in the 5th section of the 9th article of our constitution, that " the corporate authorities of counties, townships, school districts, cities, towns, and villages, may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same;" that such provision was a limitation upon the power of the legislature to grant the right of corporate or local taxation to any other persons than the corporate or local authorities, and by whom was to be understood those municipal officers who are either directly elected by the population to be taxed, or appointed in some mode to which they have given their assent, and that commissioners named and appointed as in this act, were not such corporate authorities. In those cases, the acts were never submitted to a vote of the inhabitants of the district embraced in the acts. In *The People ex rel.* v. *Salomon,* 51 Ill. 51, it was held, where an act, vesting the power of taxation in park commissioners to be appointed by the governor, had been submitted to a vote of the people of the district to be affected by their acts, and adopted, the commissioners thus appointed were a corporate authority within the meaning of the constitution.

Under the latter decision it would seem to follow, that, had the act in question, of 1859, been submitted to and adopted by a vote of the people within the district to be drained, these commissioners might be regarded as such a corporate authority. The 9th section of this act of 1859 does provide for its submission to a vote of the legal voters within the district to be drained, owning or occupying land within the same, and that, unless adopted, it shall be of no force or effect. Appellant's counsel denies, in argument, that the act was submitted to a vote; the bill is silent upon the subject. Without saying what the presumption should be on demurrer, we will dismiss the point without further consideration, as we must hold the taxes to be invalid upon another ground, and that is, that they were imposed in entire disregard of the principle of equal-

ity and uniformity. It was declared, in *The City of Chicago* v. *Larned*, 34 Ill. 279, that under our constitution there did not exist a power of apportioning taxes, whether of a general or of a local character, except on the principle of equality and uniformity. The language of the constitution in that respect is, that the general assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property, and that taxes for corporate purposes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same; and it was held, that special assessments were reconcilable with this principle, and could be upheld only where the special benefits a lot would derive from the improvement, were assessed to it, and the residue of the cost paid by equal and uniform taxation. And in *Harward et al.* v. *St. Clair Drainage Co. supra*, it was said, a tax assessed upon each tract only to the extent of the benefits conferred would be no violation of the principles of equality and uniformity.

The assessments in question were not based upon the valuation of the respective tracts of land assessed for the drainage of the lands embraced in the act, neither was the assessment made upon each tract only to the extent of the special benefits conferred. A sufficient tax was authorized to be levied upon the lands described to complete their drainage, provided it did not exceed fifty, forty, and thirty cents per acre on the lands in the respective classes, without any regard to whether the lands were benefited to the extent of the tax or not. It would not follow that the lands would be benefited to the extent of the amount of money expended in the drainage of them, much less that any particular tract would be benefited to the extent of the tax imposed upon it. The only regard had to benefits was, that the lands were to be classified into three classes, placing the portion most to be benefited in the first class, and that to be least benefited in the third class; the tax to be levied according to classification, the first class paying the highest rate of taxation, and then fixing a maximum rate of taxation in each class, making an arbitrary differ-

ence in it of ten cents per acre in the different classes respectively.

Manifestly, a tax assessed upon such a basis would not be one assessed upon each tract of land only to the extent of the special benefits conferred on it.

The complainant being in the possession of the land, a court of equity would entertain jurisdiction of a bill to remove a cloud upon the title, consisting in an illegal tax deed obtained upon it, as repeatedly held in recent decisions of this court. *Gage* v. *Rohrbach,* 56 Ill. 262; *Gage* v. *Billings,* id. 268; *Reed* v. *Tyler,* id. 288.

As to the bill not offering to refund to the defendant the taxes discharged by him,—as they were illegally assessed, they were no charge upon the land, and the complainant was not liable for their payment; and it not appearing, by the bill, that any benefit had been bestowed upon the land in the way of drainage or otherwise, there would arise no equitable claim upon the complainant that he should refund the taxes discharged by the defendant by his tax sale purchase.

The demurrer to the bill should have been overruled.

The decree must be reversed and the cause remanded.

*Decree reversed.*