## TOWN OF MACON v. JOHN W. PATTY.

1. MUNICIPAL CORPORATION.   *Police power.   Local assessment.   Streets.*
    While a local assessment requiring each lot-owner on a street to improve the carriage-way in front of his property is unconstitutional, the paving and repairing of the sidewalk may be imposed on him as a police duty.

2. SAME.   *Fire limits.   Non-combustible pavement.*
    A municipality, whose charter enables it to provide for the prevention of fires and the construction and repair of sidewalks, may, in the exercise of its police power, require sidewalks within its fire limits to be paved with bricks.

3. SAME.   *Street repairs.   Discretionary power.   Delegation.*
    The board of mayor and aldermen of the municipality, who are authorized to determine when the sidewalks are out of repair, cannot delegate such power to a street committee.

4. POLICE POWER.   *Local assessments.   Sidewalks.   Materials.*
    Police power explained and defined, and distinguished from local assessments for improving streets ; and the effect of location, use, and like circumstances discussed in determining what materials may be required in sidewalks.

5. LOCAL ASSESSMENTS.   *Source.   History and principles.*
    Local assessments explained and their judicial history given, with the grounds on which they rest and the principles by which they are regulated, with especial reference to streets in towns and cities.

6. SAME.   *Land.   Public use.*
    A local assessment which applies to land alone, and is incident to its location, is the regulation of the management of an interest common to the persons of a district and the general public, so that those who enjoy the benefits shall equally bear the burden.

7. LOCAL ASSESSMENTS. *Eminent domain. General taxes.*

The power to make local assessments is distinct from the right of eminent domain, and, though a taxing power, it is special and peculiar, and is not regulated by the constitutional provisions as to equality and uniformity on an *ad valorem* basis.

8. SAME. *Limitations on the power. Apportionment.*

The power is, however, not arbitrary; but among the limitations, arising from its nature and that of the taxing power, which the courts will enforce, is the one that the assessment cannot be imposed upon an individual, but must be apportioned among a sub-district of several.

9. SAME. *Constitutional law. The conservative principle.*

The constitutional prohibition against taking for public use without compensation, restrains not only the right of eminent domain, but all invasions of private property by public authority, including the exaction of money under the guise of taxation, beyond the limits of the taxing power.

10. SAME. *Object. Improvement. Rate.*

The object of the assessment must be public, but not so exclusively public as to prevent its imposition in a particular locality; its proceeds must be expended on an improvement plainly exceptive and beneficial to the property on which it is imposed, and its rate must not be excessive, beyond the cost of the improvement.

11. SAME. *Sub-district. Enforcement.*

It is levied, under authority derived from the legislature, on property in a district created for the purpose, and enforced by the summary remedies for collecting taxes, but is exceptional in time and locality, and ceases with the accomplishment of its object.

12. SAME. *Public benefit. Consent of property-owners.*

When the district is less than a legal subdivision of the State, an assessment for an improvement, in the use of which the general public are interested, is invalid without the consent, in some way expressed, of the people of the district. Per GEORGE, C. J.

13. SAME. *Streets. Municipal ordinance.*

An ordinance is valid if it requires all the streets in the town to be paved, and assesses the property-holders of each street with the costs of their street; or if much of the town has been improved by local assessments on the several streets, and it provides similarly for paving the remainder.

14. SAME. *Improving streets. Consent of property-owners.*

If, however, the municipality selects a part of the streets to be improved in that way, or selects a part to be improved in a manner exceptionally expensive as compared with the remainder, the persons on whom the burden is cast have a right to be consulted. Per GEORGE, C. J.

ERROR to the Circuit Court of Noxubee County.

Hon. JAMES M. ARNOLD, Judge.

The charter incorporating the town of Macon provides that the board of mayor and aldermen shall have power, within the town, by ordinance, to assess, levy, and collect taxes; to make regulations to secure the general health of the town; to prevent, abate, and remove nuisances at the expense of owners or occupants upon whose grounds they may exist; to establish, widen, grade, pave, or otherwise improve streets, and to clean them and keep them in repair; to provide for the prevention and extinguishment of fires; to require every male inhabitant of the town to work ten days in each year on the streets or pay five dollars in lieu of such work; to remove all obstructions from the sidewalks; and to provide for the construction and repair of the same.

*Jarnagin, Bogle & Jarnagin,* for the plaintiff in error.

1. The question is as to the power of the corporate authorities of the town of Macon, under the charter, to pass and enforce the ordinance to compel lot-holders to repair the sidewalks in front of their property. The legislature may constitutionally confer upon a municipal corporation the power to grade, pave, or improve streets by local assessment upon the persons or property benefited, or at the expense of the abutting lots. 2 Dillon Mun. Corp. §§ 481, 596; *Willard* v. *Presbury,* 14 Wall. 676; *United States* v. *New Orleans,* 98 U. S. 381; *Daily* v. *Swope,* 47 Miss. 367. Municipal powers are such as are conferred in express words by the charter or implied from those granted or incident thereto. 1 Dillon Mun. Corp. § 55. The municipality may exercise all powers which are reasonably proper to give effect to the authority bestowed by its charter. *New London* v. *Brainard,* 22 Conn. 552. Unless restricted, it may select means adapted to the end, and is not confined to a single mode of operation. *Bridgeport* v. *Housatonic Railroad Co.,* 15 Conn. 475; *Mobile* v. *Yuille,* 3 Ala. 137.

2. The charter of the town of Macon authorized the board of mayor and aldermen to provide for building and repairing sidewalks and remove obstructions therefrom, but did not prescribe the mode of constructing and refitting, nor the nature of the repairs to be made. The power, therefore, carried with

it authority to employ the ordinary means used by such corporation for its exercise. *United States* v. *New Orleans*, 98 U. S. 381; 1 Dillon Mun. Corp. § 58. Authority to make pavements implies the duty of determining the necessity therefor, and power to restore them includes the right to decide when they need repairing.

3. If the ordinance under consideration is within the powers contained in the charter, it is not essential that it should be a valid local assessment, but it can be sustained as a police regulation. The town is authorized to establish fire limits, and the requirement of brick pavements is not so onerous as the prohibition, within such precincts, of wooden buildings, which was sustained in *Alexander* v. *Town Council*, 54 Miss. 659. It is also empowered to prevent and remove nuisances. A lot-owner can be required, under the police power, to remove obstructions from the sidewalk in front of his lot. *Goddard, Petitioner*, 16 Pick. 504. An inflammable pavement is as much a nuisance in a crowded town as one covered with snow, or out of repair. In the case of *Mayor* v. *Maberry*, 6 Humph. 368, as in the case at bar, the sidewalk was by ordinance declared a nuisance, and on the owner's refusal to repair it, the municipal authorities proceeded to do so at his expense. The ordinance is clearly, on a fair construction, within the charter powers of the municipality.

*Rives & Rives*, for the defendant in error.

1. The legislature had no right to order Patty to repair the sidewalk in front of his property, and could not delegate a power which it did not itself possess. The authority cannot be referred to the general police power of the State. Some cases, following *Goddard, Petitioner*, 16 Pick. 504, distinguish between streets and sidewalks, affirming a power as to the latter which they deny as to the former, on the ground that keeping the pavement free from obstructions imposes only a light burden on each property-holder, who from his situation is able to perform the duty with the promptness which the benefit of the community requires. But Goddard was commanded to remove snow, not to pave the footway. Even that power has been denied, and on the better reason. *Gridley* v. *Bloomington*, 68 Ill. 47. The city, not the adja-

cent property-holder, owns the sidewalk. On what principle can the subject be required to do little and not much; or to shovel snow when he cannot be compelled to hod brick? Who is to decide how much time, money, and labor the citizen can be constrained to expend? It is no answer to say that the sidewalk is the limit, for who can tell how wide it shall be or how expensively finished? Oppression has no limit, if the citizen can be coerced to remove obstructions from a foot of public land, or spend a cent for its improvement. The doctrine, if once admitted, can be used to rear pyramids. The legislature may make the street a taxing district, and assess the expense of the improvements upon the contiguous property in proportion to frontage, but power to provide that each lot shall pay the whole cost of the construction upon which it abuts cannot be exercised by a constitutional government. Cooley Const. Lim. 501, 508. The authority claimed cannot be referred to the power to make local assessments. The State cannot direct a topical tax for local improvements without the express consent of a majority of those to be benefited. The converse proposition would destroy the citizen's right of property, and make him the mere agent of the government in its management. The impost must be made upon some rule of apportionment, and have reference to the benefit conferred and the value of the property assessed. Const., art. 12, § 20. This section was not contained in the Constitution under which *Smith* v. *Aberdeen*, 25 Miss. 458, was decided. It was, therefore, beyond the legislative power to authorize the ordinance.

2. Under the charter, however, the town had no such power, even if the legislature could constitutionally confer it. The municipality has only such powers as are clearly given by the charter or indispensable to its existence, or to the exercise of authority expressly granted. Reasonable doubts are resolved against the grant. Cooley Const. Lim. 192; 1 Dillon Mun. Corp. § 55. The power of taxation is not to be extended by construction; and authority to make improvements does not carry with it the right to tax the adjacent property for the expenses. 2 Dillon Mun. Corp. §§ 605, 606; *Willard* v. *Presbury*, 14 Wall. 676.

*Orr & Sims*, on the same side.

1. No authority is conferred on the mayor and aldermen in the charter of Macon to require lot-owners to pave the streets in front of their lots. A municipal corporation can exercise such powers only as are expressly or impliedly granted by its charter, and even those are to be strictly construed. 1 Dillon Mun. Corp. § 55, note; *Leonard* v. *Canton*, 35 Miss. 189; Cooley on Taxation, 209, 418, 420; Cooley Const. Lim. 194, 195; *Sharp* v. *Speir*, 4 Hill, 76; *Lowell* v. *French*, 6 Cush. 223. The streets and sidewalks must be kept in order by means of the general tax which the charter gives authority to levy and collect. Cooley on Taxation, 418, 420; 2 Dillon Mun. Corp. § 607; *Mobile* v. *Dargan*, 45 Ala. 310.

2. The order to the defendant in error to repair the sidewalk was signed by persons styling themselves "street committee," and did not proceed from the mayor and aldermen, who alone could, in any event, have authority to make it, under the town charter. Who is to determine the existence of the nuisance? How and on what notice shall it be abated, and from whom must the notice come? The mayor and aldermen cannot delegate, even if they possess, such powers. Dillon Mun. Corp. §§ 60, 308, 312, 642, 643; Cooley Const. Lim. 204, 353, 364; *Furhman* v. *Huntsville*, 54 Ala. 263.

GEORGE, C. J., delivered the opinion of the court.

The Board of Mayor and Aldermen of the town of Macon passed an ordinance in September, 1873, by which they required every owner or claimant of a lot fronting any public street in said town, to make a sidewalk of certain specified dimensions along the whole of his property, and to keep the same in repair, when required to do so by a resolution of the board. The sidewalks within certain defined limits on Jefferson Street were required to be of whole brick; all other sidewalks were to be of brick, plank, sand, gravel, or other substance capable of being smooth and hard. It was also provided that "all sidewalks which shall not be put in condition according to the orders of the board, and within the time prescribed, and thereafter kept in repair, are hereby declared nuisances, to be abated as other nuisances." In July,

1878, A. Klaus and J. N. Holman, styling themselves "street committee." addressed a letter to Patty, the defendant in error, in which they notified him to have the sidewalk in front of the residence then occupied as a millinery shop placed in good repair with whole brick immediately ; and that, if the order was not complied with, the street committee would have the work done at his expense ; and they requested an answer as to his intention in respect to complying with the order. Three days after the date of the above letter, Patty replied to it, declining compliance on the following grounds : 1st. That the sidewalk did not belong to him, but was public property, like other portions of the street. 2d. That the sidewalk compared favorably with the best sidewalks in the town. 3d. That the committee had no legal right to issue such order. The street committee thereupon proceeded to have a sidewalk laid, ninety-nine feet in length, in front of the property, at a cost of fifty-two dollars, for which sum the town of Macon brought this action before its mayor, and recovered judgment. By agreement of the parties the cause was taken to the Circuit Court by *certiorari;* and in that court judgment was pronounced, reversing the judgment rendered by the mayor, and dismissing the suit. From this judgment this writ of error is prosecuted.

It is now well settled with no dissenting voice, except in Iowa, that a local assessment requiring each lot-owner on a single street or part of a street to improve the street in front of his property at his own expense would be unconstitutional, because there would be no apportionment of the tax ; and Judge Cooley says that such a law " would be nakedly an arbitrary command to each lot-owner to construct the street in front of his lot at his own expense, according to a prescribed standard ; and a power to issue such command could never be exercised by a constitutional government, unless we are at liberty to treat it as a police regulation, and place the duty to make the streets upon the same footing as that to keep the sidewalks free from obstruction and fit for passage. But any such idea is clearly inadmissible." Cooley Const. Lim. 508. Burroughs takes the same position. Burroughs on Taxation, 469. And the cases are uniform to the same effect, except in Iowa. That the power

of making local assessments for local improvements is not regulated by the provisions of the Constitution of the State, which provide for uniformity and equality in taxation, on an *ad valorem* basis, has been settled by this court in *Daily* v. *Swope*, 47 Mass. 367, in a learned and elaborate opinion by Simrall, C. J. This opinion follows the authorities which sustain such assessments in other States having similar provisions in their Constitutions, and places this right in the taxing power of the legislature. *People* v. *Mayor of Brooklyn*, 4 N. Y. 419; *In re Washington Avenue*, 69 Penn. St. 351; *Lexington* v. *McQuillan*, 9 Dana, 513; *Burnes* v. *Atchison*, 2 Kansas, 454; *St. Joseph* v. *O'Donoghue*, 31 Mo. 345; *Burnett* v. *Sacramento*, 12 Cal. 76; *Yeatman* v. *Crandall*, 11 La. An. 220; *McGehee* v. *Mathis*, 21 Ark. 40; *Goodrich* v. *Winchester Turnpike Co.*, 26 Ind. 119; *Scovill* v. *Cleveland*, 1 Ohio St. 126; *Norfolk* v. *Ellis*, 26 Gratt. 224. Contra, *Mobile* v. *Dargan*, 45 Ala. 310. This power is also classed under the law of taxation in Sedgwick on Stat. & Const. Law (2d ed.), 426; 2 Dillon Mun. Corp., ch. xix. § 586; Cooley Const. Lim. 497, 498.

But, while these assessments are made under the taxing power, a very wide distinction has been taken between them and taxes for general purposes. On account of this essential difference, the courts have been enabled to reach the conclusion above referred to, that local assessments are not within the terms of constitutional restrictions on the subject of taxation. And this difference is even more clearly recognized in numerous cases which hold that statutory exemptions from taxation do not include exemptions from local assessments. Thus, in *The Matter of the Mayor of New York*, 11 Johns. 77, it was held that a statute which provided that no church or place of public worship should "be taxed by any law of this State" did not confer an exemption from an assessment to improve the street on which the church assessed was situated. And in *Baltimore* v. *Greenmount Cemetery*, 7 Md. 517, where the charter of the company provided that a certain number of acres of land "shall be for ever appropriated and set apart as a cemetery, which, so long as used as such, shall not be liable to any tax or public imposition whatever," it was held that the

exemption applied only to taxes or impositions for the purposes of revenue, and did not prevent the assessment on the cemetery by the municipal authorities of a due proportion of the cost of improving the street on which it was located. See, also, *Merrick* v. *Amherst*, 12 Allen, 500, and numerous cases cited in Cooley on Taxation, 147, and Burroughs on Taxation, 461. This distinction is so marked that it is held that the grant to a municipal corporation of the simple power to levy taxes does not authorize it to make local assessments for local improvements. 2 Dillon Mun. Corp. § 606, note 3; *Wright* v. *Chicago*, 20 Ill. 252; *Columbia* v. *Hunt*, 5 Rich. 550; *Chicago* v. *Wright*, 32 Ill. 192; *Annapolis* v. *Harwood*, 32 Md. 471; Cooley on Taxation, 418. This power, therefore, though it is a power of taxation, is a peculiar and special power, and is regulated by considerations distinct from those which regulate the taxing power.

A local assessment can only be levied on land; it cannot, as a tax can, be made a personal liability of the tax-payer; it is an assessment on the thing supposed to be benefited. A tax is levied on the whole State, or a known political subdivision, as a county or town. A local assessment is levied on property situated in a district created for the express purpose of the levy, and possessing no other function, or even existence, than to be the thing on which the levy is made. A tax is a continuing burden, and must be collected at stated short intervals for all time, and without it government cannot exist; a local assessment is exceptional both as to time and locality, — it is brought into being for a particular occasion, and to accomplish a particular purpose, and dies with the passing of the occasion and the accomplishment of the purpose. A tax is levied, collected, and administered by a public agency, elected by and responsible to the community upon which it is imposed; a local assessment is made by an authority *ab extra*. Yet it is like a tax, in that it is imposed under an authority derived from the legislature, and is an enforced contribution to the public welfare, and its payment may be enforced by the summary method allowed for the collection of taxes. It is like a tax, in that it must be levied for a public purpose, and must be apportioned by some reasonable rule among those upon

whose property it is levied. It is unlike a tax, in that the proceeds of the assessment must be expended in an improvement from which a benefit clearly exceptive and plainly perceived must enure to the property upon which it is imposed, or else the courts will interfere to prevent its enforcement. *Hammett* v. *Philadelphia*, 65 Penn. St. 146. The courts will also interfere to prevent an excessive rate, beyond the cost of the improvement. It is also within the power of the courts to judge whether the object for which it is made is public, and also whether it is so exclusively public as to prevent its imposition on a particular locality.

These differences have not always been borne in mind by courts in discussing the nature and extent of the power of local taxation. There seems to have been a diversity of opinion at first, as to whether the power should be referred to the right of eminent domain or to the power to tax. In *People* v. *Mayor of Brooklyn*, 6 Barb. 209, the Supreme Court of New York, in an able opinion drawn up by Justice Barculo, decided that a law authorizing a municipal corporation to make an improvement in a street, and to assess the cost on the property adjacent according to the benefit each lot should receive from the work, was an attempt to take private property for public use, under the power of eminent domain, and held the law unconstitutional because no provision was made for compensation. This case was taken to the Court of Appeals, and the judgment of the Supreme Court reversed. Mr. Justice Ruggles vindicated the conclusion to which the Court of Appeals arrived in a very learned opinion, in which he denied that the law was an attempt to exercise the right of eminent domain, but was a valid act under the taxing power. 4 N. Y. 419. Having reached this conclusion, he quoted from Marshall, C. J., in *Providence Bank* v. *Billings*, 4 Peters, 514, 563, as follows: "The power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic. This is an original principle which has its foundation in society itself. It is granted by all for the benefit of all. It resides in government as a part of itself, and need not be reserved when property of any description, or the right to use it in any manner, is granted to individuals

or corporate bodies. However absolute the right of an individual may be, it is still in the nature of that right, that it must bear a portion of the public burdens, and that portion must be determined by the legislature. This vital power may be abused." "But the interest, wisdom, and justice of the representative body, and its relations with its constituents, furnish the only security against unjust and excessive taxation, as well as against unwise legislation." And he further quoted from the same learned judge, in M' Culloch v. Maryland, 4 Wheat. 316, 428, as follows : " It is admitted that the power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax, the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation. The people of a State, therefore, give to their government a right of taxing themselves and their property, and as the exigencies of the government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and the influence of the constituents over their representative, to guard them against its abuse." "And it is unfit for the judicial department to inquire what degree of taxation is the legitimate use and what degree may amount to the abuse of the power."

Under the influence of these doctrines, which were applied by Marshall, C. J., to the right of general taxation vested in the legislature of a State to provide a revenue for the public service, the Court of Appeals of New York reached the conclusion that this power of local taxation, being the same thing as the taxing power, was illimitable, with no other restriction than the discretion of the legislature and their responsibility to their constituents. On this point the court said: " The power of taxation, or of apportioning taxation, or of assigning to each individual his share of the burden, is vested exclusively in the legislature." These powers " are identical and inseparable. Taxes cannot be laid without appor-

tionment, and the power of apportionment is therefore unlimited, unless it be restrained as a part of the power of taxation." The court then proceed to define the justice of local taxation imposed on those who are to receive the benefits to be derived from the expenditure; but they nowhere intimate that the power to levy the local tax is dependent upon the fact that its expenditure is a real local benefit, but state explicitly that the determination and judgment of the legislature on the subject are conclusive and cannot be revised by the courts. And in *The People* v. *Lawrence*, 41 N. Y. 123, 137, the same court announce the same doctrine, saying that there is no constitutional restraint upon the exercise of this power; that the right of determining what portion of the public burdens, by way of taxation, shall be borne by any individual or class of individuals, must be determined by the legislature; that, however much this power may be abused by the legislature, the only check upon it is the responsibility of the legislative body to its constituents, and that the judicial department can afford no redress. And to the same effect is *St. Joseph* v. *O'Donoghue*, 31 Mo. 345.

The courts having reached the conclusion, as before shown, that the restrictions in the various State Constitutions on the power of taxation, requiring taxes to be levied with equality and uniformity and on an *ad valorem* basis, did not apply to local assessments, this power was thus left practically without limit. The tax-payer was even deprived of that protection, stated by Marshall, C. J., to be the only safeguard against oppressive and unjust taxation, the accountability of the body levying the taxes to its constituents; for it is at once perceived that a legislature levying an imposition on a small district, in many instances not including a dozen tax-payers, were not under the ordinary influence exercised by constituents on their representatives. The tax-payer was in effect left, in the language of Robertson, C. J., in *Lexington* v. *McQuillan*, 9 Dana, 513, to "spoliation by a dominant faction, or by a rapacious public power, acting in obedience to a constituent body, for whose use his property may be taken, and from whom no similar contribution is required." It is true, it was said that the tax was for the benefit of the person who paid

it; that he received a full equivalent for the money exacted from him in the enhanced value of his estate; and that, though the object was so far public as to justify the interposition of the legislature in levying a tax, yet the benefit was private and individual, and ought therefore to be borne by those who received the advantage of the expenditure. But under the view which the courts had taken the legislature was the exclusive judge, and, in the plenitude of its power, could determine that the object was so far public as to authorize the imposition of the tax, and so far private as to authorize the assessment to be made on private persons on account of the benefits to be conferred by it, and could also judge of the necessity for and the extent of the improvement to be made. This inconsistency was strongly put by the Supreme Court of Wisconsin, in *Weeks* v. *Milwaukee*, 10 Wis. 242, 259. That court, in speaking of the improvement of a public street by local assessment, said: "In sustaining these assessments when private property was wanted for a street, it has been said the State could take it, because the use of a street was a public use; in order to justify a resort to the power of taxation, it is said the building of a street is a public purpose. But then, having got the land to build it on, and the power to tax, by holding it a public purpose, they immediately abandon that idea, and say that it is a private benefit, and make the owner of the lot build the whole of it." And the court reached the conclusion that the power to make local assessments, though a part of the taxing power, yet was special and peculiar, and was conferred on the legislature only, in virtue of a clause in the State Constitution recognizing the power of "assessment" as distinct from the power of taxation.

As the dangerous nature of the power began to be more and more recognized, when considered as a taxing power only, and therefore virtually without restriction, unless imposed by the Constitution, and as the courts had held that it was not within the constitutional restriction in reference to the taxing power, the judicial mind, giving more importance to those peculiarities which distinguished it from the taxing power pure and simple, began to discover restrictions and limitations arising from its nature and characteristics, as well as

from the nature and characteristics of the taxing power in general. In *Lexington* v. *McQuillan*, 9 Dana, 513, the city ordinance authorized the charge of paving a street in front of each lot to be levied on that lot alone, without reference to whether there would be inequalities in the cost, arising from a difference in the difficulties of doing the work in front of the several lots. There was no effort to apportion the cost of the whole improvement among the several lots, but each lot was made to bear the whole burden of the improvement in its front. This assessment was attempted to be defended upon the ground of the unlimited taxing power of the legislature. But the court said that the doctrine that the taxing power in this country is altogether arbitrary is alarming ; that it was limited by some of the declared ends and principles of the fundamental law ; that among these are equality as far as practicable, and security of property ; that though exact equalization is unattainable and utopian, there are well-defined limits within which, practical equality may be preserved, and which should be deemed impassable barriers to legislative power ; that, though taxation may not be universal, it must be general and uniform ; that the legislature cannot exact from one citizen, or one county, the whole revenue of the commonwealth, for that would be taking private property for public use without compensation ; that whenever the property of the citizen is taken and appropriated, without his consent, to the public benefit, the exaction is not a tax, unless similar contributions be made by that public itself, or shall be exacted rather by the same public will from such constituent members of the same community generally as own the same kind of property ; that taxation and representation go together, and therefore when taxes are levied they must be imposed on the public, in whose name and for whose benefit they are required, and to whom those who impose them are responsible; that the citizen's property should not be taken by the public without his consent, or an equivalent in money, or in similar contributions by itself; that the legislature may make local taxing districts, composed of streets or parts of streets, for the improvement of these highways ; that when this is done, each district must be regarded as a separate municipality in itself, with power to act

for itself as to the improvement for which it was created; that this authority was duly conferred by the charter of Lexington in requiring the assent of a majority of the property-holders in the district to the improvement and assessment, or, in lieu of this, by requiring the unanimous consent of the city council, which necessarily included the consent of the member representing the ward of which the sub-district assessed was a part. The court admit, that there would probably be no reasonable objection to an ordinance requiring each lot in the city to bear the expense of the improvement in front of it, if it was required to be done in the same fiscal year; but assert that one citizen cannot be compelled to pave any one street for any one year, or at any one time, upon the ground that other streets or portions of streets would thereafter be required to be paved in the same manner, and thus a like burden would fall on other citizens exclusively; for such a prospective and contingent equalization of contribution to the public use would be too remote and uncertain to have the effect of equalization. And by this reasoning the court reached the conclusion that the ordinance was invalid for want of the apportionment necessary in taxation. In accordance with this decision, the courts everywhere, except in Iowa, hold that a local assessment, requiring each lot-owner on a single street, to improve the part of the street on which his property fronts, at his own expense, is unconstitutional; and Judge Cooley says, as already quoted, that such a law would be an arbitrary command, inconsistent with a constitutional government. Cooley Const. Lim. 508. Some of the other doctrines, so ably announced in this case, have not received the same universal recognition.

The courts of New Jersey also reached conclusions very materially restricting the power of the legislature as to local assessments. In that State, the courts deduced not only the power from the actual benefit conferred on the tax-payer, but measured the reach of the power by a judicial ascertainment of the extent of that benefit. The courts there hold that the legislature cannot judge of the extent of the benefit, and cannot apportion the tax, except in proportion to the benefits conferred; and that, if the benefits conferred do not equal the cost of the improvement, the excess of cost must be paid by

the public. They reached that conclusion by this reasoning : — that the justification for the assessment is that the lands upon which it is imposed receive a peculiar and exceptive benefit from the improvement; that the reception of such benefit prevents the assessment from being a taking of private property for the public use ; that this principle is not applicable except when the benefit is commensurate with, or superior to, the burdens ; for if the sum exacted exceed the benefit, as to that excess, there must be a taking of private property for the public use ; since the consideration of this excess over the benefit must be the public use in virtue of which the legislature alone had power to interfere. *Tidewater Co.* v. *Coster*, 18 N. J. Eq. 518; *State* v. *Newark*, 27 N. J. 185 ; *State* v. *Newark*, 37 N. J. 415 ; *State* v. *Jersey City*, 37 N. J. 128 ; *State* v. *Hoboken*, 36 N. J. 291.

In Pennsylvania, similar though not identical conclusions were reached by reasoning in substance the same. *In re Washington Avenue*, 69 Pa. St. 352. The Supreme Court there held that the assessment was only justifiable on account of the exceptive benefit to the tax-payer to be conferred by its expenditure ; that though the legislature may make the apportionment by the front foot measurement in cities and large towns, and where the density of the population along the street and the small size of the lots make it a reasonably certain mode of arriving at a just equalization of the burden, according to benefits, yet, this mode is but a substitute for an actual assessment by sworn jurors or assessors, and is allowable only because it practically arrives at a correct result in adjusting the burden according to the benefits. And in that case the court held, that the principle of the per foot assessment was inapplicable to the making of a public highway outside of a city or town ; and it further referred the question of benefits to a master, who reported that the improvement was a general public benefit, and not of peculiar and exceptive advantage to the persons on whom the assessment was made ; and on this finding by the master the court held it was incompetent for the legislature to impose a local assessment on property within one mile of the highway. And the court said, quoting from Judge Sharswood, in *Hammett* v. *Philadelphia*, 65 Penn. St. 146, 157, "Local assess-

ments can only be constitutional when imposed to pay for local improvements clearly conferring special benefits on the properties assessed, and to the extent of those benefits. They cannot be imposed where the improvement is either expressed or appears to be for general public benefit." In that case, the court admit that the power to tax is unbounded by any express limit in the Constitution of Pennsylvania; and held that the provisions in the Bill of Rights declaring that acquiring, possessing, and protecting property, were inherent and indispensable rights; that other provisions, securing the people in their possessions from unreasonable seizures, prohibiting any person from being deprived of his property unless by the judgment of his peers or the law of the land, prohibiting the taking of private property for public use without just compensation, and securing to every man, for an injury done to his lands and goods, remedy by due course of law, and the administration of justice without sale, denial or delay, and prohibiting the impairing of contracts, — stamp upon private property an inviolability which cannot be frittered away by verbal criticism on each separate clause, thereby breaking "the united fagot, stick by stick," until the strength of the whole is gone. And the court then declared that taxation is bounded in its exercise by its own nature, essential characteristics and purposes; and it must therefore visit all alike in a reasonably practical way, of which the legislation may judge, but within the just limits of what is taxation; that it must be public in its purpose, and reasonably just and equal in its distribution, and cannot sacrifice individual right by a palpably unjust exaction; to do this would be confiscation not taxation, extortion not assessment, and would fall within the clearly implied restrictions in the Bill of Rights, that laws which cast the burdens of the public on a few individuals, no matter what the pretence, or how seeming their analogy to constitutional enactments, are in their nature despotic and tyrannical, and to prevent their enforcement the judiciary must interfere.

This case was founded on the case of *Hammett* v. *Philadelphia, ubi supra,* which announces the same doctrines. In the last case, the court said that an assessment upon an individual

or a class for a general and not a mere local purpose, whether
regarded as an act of confiscation, a judicial sentence or rescript,
or a taking of private property for public use without compen-
sation, equally transcends the legislative power ; that when-
ever a local assessment upon an individual is not grounded
upon, and measured by, the extent of his particular benefit, it
is *pro tanto* a taking of private property for public use without
compensation.  And the court declare it to be the solemn
duty of the judiciary " to guard and protect this right of
property as well from indirect attacks under any specious pre-
text, as from open and palpable invasion."   The Supreme
Court of Illinois took a view similar to that of the courts of
New Jersey.   *Chicago* v. *Larned*, 34 Ill. 203 ; *Lee* v. *Ruggles*,
62 Ill. 427.

In tracing thus far the decisions in some of the most impor-
tant States in the Union, on the subject of local assessments,
we have seen the gradual rise of a revisory power of the
courts over these public impositions, which has not been ex-
tended to taxation pure and simple; and we have also seen
the recognition of the wide differences between the practical
operation of the two powers.   Proceeding upon the idea that
the local assessment was no burden, because the benefits to be
derived from the improvement were equal to the cost, another
conclusion was reached, which we will now proceed to notice.

At first these local assessments were so insignificant in
amount, as compared with the value of the property on which
they were levied, that the right to have, as a remedy for their
collection, a personal judgment against the owner was not chal-
lenged, and there are many instances in which such judgments
were rendered.   At length the spirit of speculation in town
and city lots induced a pushing of street improvements far
beyond the immediate necessities for them in the hope that
the progressive enterprise and rapid growth of the towns and
cities in which they were made would soon overtake them,
and amply repay the costs in the enhanced value of the
lots in the neighborhood.   In many instances, these hopes
were not realized and the cost of making expensive improve-
ments on newly opened streets, which were but sparsely
settled, was found to be so great as to induce a surrender

of the property assessed; but contractors for the improvements, to whom the assessments were assigned as their means of compensation, were unwilling to accept the property thus enhanced in value by the improvements for the cost of making them, and, after having exhausted this property, sought to collect the unpaid balance from the general estate of the owner. These attempts were resisted in the courts, and caused a more careful inquiry into the nature of these assessments. The conclusion was reached in California and Missouri, that it was not within the power of the legislature to make these assessments a charge beyond the property on which they were made. *Taylor* v. *Palmer*, 31 Cal. 240; *St. Louis* v. *Allen*, 53 Mo. 44. We agree that the result reached is correct; but a logical conclusion from the grounds upon which these assessments were justified would have been to confine the remedy to the increased value of the estate, caused by the improvement. For it was said in Missouri, in *Garrett* v. *St. Louis*, 25 Mo. 505, that the assessment was a tax, not on the property directly, but on the benefits to be conferred by the improvement. Judge Sharswood, in *Hammett* v. *Philadelphia*, *ubi supra*, said: " Whenever a local assessment upon an individual is not grounded upon and measured by the extent of his particular benefit, it is *pro tanto* a taking of his private property for public use without any provision for compensation." And the assessment was universally justified upon the ground that it was in fact no real charge or burden, because the owner who paid it was fully indemnified by the enhanced value of his property. It is not perceived that the wrong of imposing a burden on a man's property, on the ground that it is enhanced in value at least to the extent of the burden, and then selling the property thus enhanced to discharge the burden, whereby the owner loses his property through an obtrusive and uninvited effort on the part of the public to benefit him, differs, except in degree, from the injustice of a proceeding, in which to this same wrong is superadded the duty of paying a balance that may be due after exhausting the property supposed to be benefited. If the problem is to be worked out on the idea that the assessment is no burden, because the benefit will be equivalent to it, then, in case of the inability of the

owner to pay for the boon conferred on him, the remedy of the benefactor should be limited to the taking of so much of the estate as will represent the increased value imparted to it by his efforts.

But this theory rests on a false foundation, though the conclusion is just. The assessment is a burden and an exaction in behalf of the public. It is made for a public use. Public authority to enforce it can be justified on no other ground. Power does not exist in a constitutional government to compel a person to improve his estate for his own private benefit. This theory cannot receive the sanction of this court, for the reason that it is grounded on a violation of that clause of the Constitution which declares that " private property shall not be taken for public use, except upon due compensation first being made to the owner or owners thereof, in a manner to be provided for by law." In *Brown* v. *Beatty*, 34 Miss. 227, the High Court of Errors and Appeals of this State rightly decided that this compensation could not be made in estimated benefits thereafter to accrue from an improvement thereafter also to be made. The compensation must precede, not follow, the taking, and hence could not be affected by any thing that was to be done afterwards.

We must apply this provision in all cases, notwithstanding it has been said that it is only applicable to property taken under the right of eminent domain, which right does not extend to the taking of money. We agree that the most important use of this provision is to restrain the right of eminent domain ; but that is not its whole force. For the prohibition is general and absolute : " Private property shall not be taken for public use, except upon due compensation," is the language of the Constitution. The prohibition is not as to the methods in which the appropriation may be made, but is a denial of the power to make it at all by any method, under any circumstances, and under any pretence whatever, unless compensation is first made. It was intended to secure the absolute inviolability of private property of all kinds against any and all invasions under public authority. If the right of eminent domain does not extend to the taking of money, this is no reason why that kind of property should not come within

the protection of this clause of the Constitution ; but, on the contrary, the absence of the right is but an additional safeguard for its protection. It is true that money exacted from the citizen, in the way of lawful and constitutional taxation, is not within the meaning of this clause, because it is taken in discharge of a debt to the State or public. But, if under the guise of taxation money is attempted to be exacted beyond the limits of the taxing power, it is a violation of the security afforded by this clause of the Constitution. Chief Justice Marshall of Kentucky, in *Cheaney* v. *Hooser*, 9 B. Mon. 330, 341, said : " There being no express constitutional declaration or prohibition applicable to the power or subject of taxation, and none which in terms secures equality or uniformity in the distribution of public burdens, either general or local, there is no clause to which the citizen can with certainty appeal for protection against an oppressive and ruinous discrimination under color of the taxing power, unless it be that which prohibits the taking of private property for public use without compensation." " This is the great conservative principle of the Constitution, by which the rights of private property are to be preserved from violation by public authority ; and we shall feel bound to give it, as has heretofore been done, a liberal construction for the attainment of so important and valuable an object."

It is said, however (and that view is pressed with great force and plausibility in *People* v. *Brooklyn*, 4 N. Y. 419, heretofore commented on), that local assessments cannot be drawn within the purview of this clause of the Constitution, because taxation operates upon a community, and by some rule of apportionment; and the exercise of the right of eminent domain operates upon an individual, and without reference to the amount or value exacted from any other individual or class of individuals. The distinction is a just one, but we cannot perceive that it has the force ascribed to it. The force of the argument, as we understand it, is, that a local assessment, because levied on a community and not on a single individual, cannot be made under the power of eminent domain, and therefore is not within the protection of this clause of the Constitution. If it be a valid local

assessment, the conclusion is just; but the argument cannot be made to sustain the validity of the assessment itself, if that be the thing in question, unless we concede that every taking of private property not under the right of eminent domain must be a valid act, if only several, — a local community, instead of an individual, be the victim. This argument prevents individual acts of spoliation, but licenses a general pillage, and converts single acts of lawlessness into valid exercises of lawful authority, by the simple process of repetition. *In re Washington Avenue*, 69 Penn. St. 352; *Hammett* v. *Philadelphia*, 65 Penn. St. 146.

Since then it appears, that under the Constitution of this State, private property cannot be taken for the public use, under the plea, that due compensation is made by benefits arising from the appropriation; and since it has also been shown that the taxing power may be limited and controlled by what Judge Marshall, in the passage heretofore quoted, called the great conservative principle of the Constitution, — the provision prohibiting the taking of private property for public use without due compensation, — it follows that the power to make local assessments in this State does not exist, if there be no other foundation for it than the equalization of the burdens with the benefits to arise from the local improvement.

We believe the power exists: it has been recognized as an existing power in the State by the public, the legislature, and by at least three decisions of this court. It may be difficult, perhaps impossible, to trace it to its proper source, and square its operation by logical rules, derived from a consideration of it as one of the precisely defined powers of the Constitution. It had its origin and development in the principle of local self-government, characteristic of free institutions, founded by the Anglo-Saxon race, — the leaving to each local community the due administration of the affairs in which it had an exceptive, peculiar and local interest, and in the nature of real property, to which it is alone applicable. It is not the creation of a philosophical brain drafting constitutions and forms of government, but the outgrowth of the necessities and varying exigencies of local communities, and hence, like all institutions of similar origin and development, has in-

consistencies and incongruities. Its practical operation, so as to prevent injustice, depends largely upon the good sense and the capacities of the Anglo-Saxon race for the successful working of free government and the management of their private affairs. It combines the public interest with the administration of individual property. Chief Justice Shaw in *Wright* v. *Boston*, 9 Cush. 233, 241, said the principle of local assessments is " that when certain persons are so placed as to have a common interest among themselves, but in common with the rest of the community, laws may be justly made, providing that, under suitable and equitable regulations, those common interests shall be so managed that those who enjoy the benefits shall equally bear the burden." And the Supreme Court of Maryland in *Baltimore* v. *Greenmount Cemetery*, 7 Md. 517, spoke of assessments for paving streets as charges on property which are " inseparably incident to its location in regard to other property."

These extracts give the true meaning of local assessments, and furnish the ground upon which they rest and the principle by which they are to be regulated. These assessments, as has been seen, apply only to land, and are a charge on land only. Land is incapable of that absolute and exclusive private dominion accorded to other property. The world's business could not be transacted for a single day without the legal recognition of rights and easements in land, independent of its private ownership. The source of all title to it is the sovereign in whose jurisdiction it exists, and this sovereign has the power to resume title to any portion of it needed for the public use, upon payment of compensation in other property. It is immovably fixed in its location and relations with other land. No one tract, however large, is capable of beneficial enjoyment, without some right or privilege of user in other land. Without such reciprocal rights, each owner of land would be a prisoner in his own home, and the ideal boundaries of separate estates would be insuperable barriers to all human intercourse and progress. There are essential improvements which cannot be made on one tract without affecting another. These relate especially to drainage, protection from inundation, and free passage and

intercourse. These improvements sometimes become of public importance, as well as indispensable to the proper enjoyment of each separate tract. In such cases society has arranged for such management of these common, public, and private interests, as would be just and equitable; and to prevent the burden of such improvements from falling only on the liberal and public-spirited, has provided for its equitable division among those interested. Such a regulation is a local assessment. Towns and cities exist for the more convenient intercourse between their inhabitants and the outside world who resort to them. Without this, there would be no reason for building them. In them, land is principally devoted to three uses, — locations for stores, shops, and factories; dwelling-places for the inhabitants and visitors; and streets, alleys and avenues, over which there may be convenient and free access to all persons, from all points to all other points. Without these, no business could be carried on; the customer and the merchant and manufacturer could not meet; the citizen could not go from his dwelling to his place of business. There is not a day in the year in which nearly every citizen does not use these highways either for business or pleasure. They must permeate every part of the city, and must lead to every man's door. A break or obstruction in any part of one of them would destroy its usefulness and result in the greatest inconvenience. They may be of various qualities, from the common dirt road to expensive pavements of stone or wood. They are essential both to the public at large and to the inhabitants who dwell or do business on them. Each street has thus a public and a local use. In a large city all the streets are rarely if ever used by the same person or by the same local public or neighborhood; hence the injustice of improving any one street at the public expense, unless the municipality should undertake to improve all alike, and in the same year, without reference to the peculiar needs of each locality. Each lot-owner has therefore a general interest in the improvement of all, and a peculiar and special interest in the improvement of the highway on which his property is located. To leave it to the voluntary action of all would result either in no improvement or the imposition of the burden on a few, when

many who derive equal benefits would go free. Hence the necessity for a just and equitable regulation by which each should be compelled to do his share.

It has been seen that in the improvement there is both a general and a local interest. To accomplish the desired result, there must be the conjoint action of those who represent each. The city council may be justly regarded as the representative of the public interest, and may therefore judge of the public necessity for the improvement, and put in operation the public powers necessary to do the work on some equitable plan. But it is not the sole judge, nor does it represent the sole interest to be affected, where the contribution of the local public or sub-district is required. As the representatives of the whole municipality, the council can do the work at the public expense. But is it authorized of its own will to impose the whole expense on the property in the locality improved? In most of the States, notwithstanding the doctrine which prevails that the assessment is no burden, but is remunerated by the enhanced value of the property, it is common to require the assent of the property-holder, on whom it is imposed, or a majority of them. Robertson, C. J., as we have seen, deemed this assent, given either directly or through their representatives, essential. Under our Constitution, where the taking of private property cannot be recompensed by the supposed public benefits to be derived from the appropriation of it, it would seem to be proper that the consent of the owner, or of a majority in a local district established for the improvement, should be obtained. We have seen that the assessment is lawful in virtue of there being a common interest between the property-holders as individuals, and an interest common between them as a locality on the one hand, and the rest of the public on the other, which justifies an equitable rule for the management of these interests. This management cannot be intrusted to one of the parties alone: the interest which justifies it is common, and the management should likewise be common. To give the sole direction and management to the city council would be to intrust them as the representatives of a public upon whom the whole duty might lawfully be devolved, and therefore, having a direct interest to exempt their constituents from a burden by placing

it on others; it would be making them the sole judges in a matter in which they were directly interested. This should not be done. It would violate the essential principles of a free government; it would turn over the property-holders to the unrestrained power of a public agency not responsible to them, and accountable only to a constituency who are interested in making the exaction for their own benefit.

Speaking for myself only, I regard it, therefore, as essential to the validity of a local assessment for a public improvement, in the use of which the general public are directly interested, and when the district on which the levy is made is less than any of the regular and legal political subdivisions of the State, that the assent of the local district should be obtained.

Other considerations apply, where the local district, as our levee district, is composed of one or more counties, and entitled therefore to direct representation in the legislature, and where, also, the general public has no user of the improvement. As to the property-owners in such a district, it cannot be said that the principle of taxation without representation has been violated; but, as to the smaller districts above alluded to, there is no pretence of representation, unless we adopt as valid the argument by which Sir James Mariott undertook to convince the British Parliament that the thirteen Colonies were represented in that body, in virtue of the representation of the County of Kent, of which, by a legal fiction, they were deemed a part. See Cooley Const. Lim. 60, note. But the right to be consulted is stronger in case of an assessment on a locality less than any political division of the State for an improvement in which the public has a direct interest and right of user than in case of the mere levy of a tax pure and simple. The excuse for the imposition is that the improvement is a private benefit to each owner. We have seen that this private benefit cannot, under our Constitution, be treated as a compensation for the money exacted, as it is in other States. It is also certain that no power exists to compel the owner of an estate to improve it for his own private benefit against his own consent. Such an order, issuing from any public authority to an individual would be an act of imperial, autocratic power, not the exercise of any function of a free government. If such

an order cannot be given, as is now universally conceded, to one individual, can it be given to two or three or a dozen, — a number smaller than the State recognizes as a distinct public, having political rights and duties, in any case whatever? Can the legislature create such a local subdivision, with no power of self-defence through representation, and endow it with no capacity whatever, except to be the bearer of a burden imposed on it without its consent? The Supreme Court of New Jersey, in *State* v. *Newark*, 37 N. J. 415, although recognizing the doctrine that the tax may be compensated by the enhanced value of the land, say, that " when such a burden is sought to be imposed on particular lands, not in themselves constituting a political subdivision of the State, we at once approach the line which is the boundary between acts of taxation and acts of confiscation." Have we not crossed that line when, without the consent of the owner, we make such an assessment under a constitution which refuses to recognize compensation in the improved value of the land?

It is said that the legislature may impose this burden without the consent of the local district, and therefore may delegate the power to a municipal council. But, if this power of the legislature were conceded, it by no means follows that it may be delegated as claimed. It will not be denied that the legislature cannot delegate the power to one municipality to levy an assessment on another, though such power might be exercised by the legislature itself. The only power of taxation or assessment which the legislature may delegate is a power to a local community to tax itself, not another. For all the purposes of the assessment, the district in which it is laid is as distinct from the municipality in which it is situated as if it were outside of its limits. By the mere act of its creation, it is made separate and distinct from the rest of the municipality. It is not only separate and distinct, but its interest, so far as the assessment is concerned, is antagonistic to the interest of the municipality which assumes to make it. That the distinction may be plainly seen between the case of a local assessment on such a district imposed by the will of another district and our levee system, we have but to imagine that the whole territory included in the levee districts is em-

braced in one county, and that the legislature has empowered the supervisors of that county to build the levee by a tax levied on the general public of the county, or by a local assessment only on the lands exclusively fronting on the Mississippi River, whereby the sole expense of protecting all the lands in the county from inundation may be imposed on a small body of proprietors, created into a taxing district at the discretion of a power interested in relieving its constituents from a great burden, by shifting it on a smaller number, who are incapable of protecting themselves. The Supreme Court of Kentucky said in the case of *Lexington* v. *McQuillan, ubi supra,* that when taxes are levied, " they must be imposed on the public in whose name and for whose benefit they are required, and to whom those who impose to them are responsible," and that the citizen's property is not be taken by the public " without his consent, or an equivalent in money, or in similar contributions by itself." And Judge Cooley, speaking of local taxation under compulsion, and the maxim that taxation and representation should go together, says, that " any reliance upon responsibility to constituents, as a check upon extravagant taxation and reckless misappropriation, becomes useless, and indeed worse than useless, because deceptive, if the constituency in general, instead of bearing the burden of evil legislation, may actually, in some cases, have the general burden diminished by the selection of particular communities for exceptional and invidious taxation. And any principle in representative government may well be considered obsolete when, as applied, it only removes the substantial responsibility and restraining power from the constituency concerned to a distant central authority." Cooley on Taxation, 495.

The above reasoning applies to local assessments, so far as relates to streets, to make a single improvement, which are not of themselves a part of a system which has already been applied or is then applied to the whole municipality, and to such as are exceptional in character and expense as compared with the burdens imposed on the rest of the community. It will be at once perceived that if all the streets in a town are required by the same ordinance to be paved, and that the

property-holders of each street are to pay the cost of paving their own street, the burden is so equalized that we must regard it as but a method of levying a tax on the whole town ; and the same result would follow if a large part of the town had been improved by local assessments on the several streets which had been acquiesced in, and a similar ordinance for repaving the remainder would steer clear of the difficulties we have mentioned. It is only when the State or a municipality selects a part of the streets to be improved in this way, or selects a part to be improved in a manner exceptionally expensive, as compared with the rest of the community, that the persons upon whom the burden is cast should have a right to be consulted. In *Howell* v. *Bristol*, 8 Bush, 493, the Supreme Court of Kentucky said : " A law imposing taxation on the general public, the evident intent and legitimate result of which are to equalize the burden so far as practicable, will not be held as violative of the fundamental law merely because that desirable end may not be attained. But when, as in this case, the most probable, if not the necessary, consequence of the law is to produce the most oppressive inequality, and to compel a small minority of tax-payers to provide at their sole expense an improvement of general utility and public interest, the construction of which costs more than double as much as the character of such improvements in general use, and from which, when constructed, the general public derives almost as much advantage as themselves, it assumes the character of an attempted exercise of arbitrary power over the property of this minority ; it becomes, in the constitutional sense, a taking and appropriation of their private property to the public use without compensation." This requirement, that the consent of the property-holders of the district, or a majority of them, should in some manner be given to the imposition of the burden, is not found in the adjudged cases, except in the Kentucky case, noted above, nor do my associates concur with me in deeming it essential. It seems to me to result logically from the premises upon which the validity of these assessments must be rested in this State. A determination of the point is not necessary to the decision of the case before us.

We conclude, therefore, that it is now established that these

local assessments are not within the unrestricted discretion of the legislature; that they are subject to many and just limitations which the courts will enforce; and that among them is, that the assessment cannot be imposed on an individual alone, but must be apportioned among a sub-district of several. If this were a local assessment, it would be void for the reasons above stated. The improvement however is the repair of a sidewalk, not of a street; and it seems to be well settled that the paving and repairing of a sidewalk in front of the owner's property may be imposed on him as a police duty. Burroughs on Taxation, 494, and cases there cited; Cooley on Taxation, 398, and cases cited.

The police power is incapable of exact definition and of a precise limitation. It seems to be a power to which are referred all governmental acts which are incapable of arrangement under any other distinct head, and which are at the same time justifiable, as internal regulations having in view facility of intercourse between citizen and citizen, the preservation of good order, good manners and morals, and the health of the public. When a duty is imposed, under this power, on a property holder, no attention is paid to the fact that its performance will confer any exceptive benefit on his property, as in cases of local assessments. On the contrary, this power justifies the exaction from him of that which will lessen the value of his estate by depriving him of what would, under other circumstances, be a lawful use and enjoyment of his property; as where it prevents his carrying on a lawful business in his house, situated in a crowded district, because such business is, under the peculiar circumstances, a nuisance; and also where it prevents the erection on his property of a house of wood or other inflammable material, as a precaution against fire. Under this power is imposed on the owner of urban property the duty of keeping his grounds and vaults clean, and the removal of all causes for the generation or spread of disease. This power, as to active duties required under it, has usually been confined to acts to be performed on property in the use and occupancy of the party upon whom they are imposed, and such imposition has been on account of such occupancy. The power imposes also a personal duty on account of

the relation which the person from whom the requisition is made bears to the property, with reference to which the duty is to be performed.

In *Goddard, Petitioner*, 16 Pick. 504, Chief Justice Shaw placed the validity of an ordinance of the city of Boston, requiring all occupants of houses abutting on streets to clear the sidewalk in front of their houses from snow within a certain number of hours after it fell, upon these grounds: 1. That the duty was salutary and advantageous in a large city, and was imposed on those who could, with little expense, most easily and promptly perform it.   2. That the selection of these persons to perform this duty was not arbitrary, as it would have been if it had been imposed on the merchants or mechanics of the city, between whose convenience and accommodation and the labor to be performed, there was no natural relation ; but the imposition was on those who could easily and conveniently perform it, and who would commonly derive a peculiar benefit from the performance.   3. That the owner of a lot abutting on a street had a peculiar interest in the sidewalk in front of his property ; that though it was subjected to a public easement, he had a peculiar use in it, often in accommodating his cellar door and steps, furnishing a passage for fuel, and a passage also from his house to the street.   Upon this case most of the subsequent cases are founded, which hold that the duty to pave and keep in repair a sidewalk may under the police power be lawfully imposed on the owner of the abutting property.   Regarding such imposition as made under the police power, Mr. Burroughs, in his work on Taxation, p. 494, says, " As a general rule it is believed that in such cases the duty consists either in keeping the walk in repair, or in constructing a footway of plank, or some similar material not very expensive, and not in constructing permanent and expensive pavements."

The police power in such cases, having reference only to the health and convenient intercourse of the citizens and general public, it would seem, ought not to be exerted to impose a burden not necessary to the end proposed.   The lot-owner, when ordered to make or repair his sidewalk, it would appear, has fully complied with his duty when he has used such mate-

rial as makes the walk dry as a requisite for health, and smooth and firm for the easy and convenient passage of the public. There would be an exception in cities which have adopted regulations to prevent the spread of fires, as to such parts of them as are within the fire limits. There the requirement of the use of non-inflammable materials can be justified. And there would be a further exception in those cases, now common in large cities, where the lot-owner has extended his cellar under the sidewalk, or so far encroached on it as to bring into operation another part of the police power which makes regulations for the safety of the public. In such cases the municipal authorities would have the power to prescribe such a superstructure over the cellar or other underlying encroachment as would be permanent and strong enough to ensure the safety of the public in using it. In parts of cities and towns where a great number of persons pass, the power would also extend to prevent the use of a material which would occasion a great noise from such constant and crowded use. But this power ought not to be extended beyond the just limits for which it is granted, and should not be made subservient to the imposition of burdens for improvements useful only for the adornment of the public streets.

It must be remembered, however, that sidewalks are also a part of the public streets, and as such may be brought within the principle of local assessments for paving and repairs, just as the carriage-way portions of the streets of which they are a part. And when the municipality chooses to make and repair them in that way, the same considerations, both as to the exaction and the extent of the improvement, apply, as in case of improvements of the carriage-way portion of the streets. It is only when the municipal authorities disregard the principle of local assessments and impose on the owners the duty of paving and keeping in repair the sidewalk in front of their lots respectively, that the police power is exercised. When, however, it is exercised, it ought to be within the limits above stated. It is not necessary to decide whether the municipality may prescribe pavement with brick, as it does not appear but that there were fire limits in the town, and that this pavement was within them. The above views are given as the general

principles which should regulate the exercise of this power, with no intent to decide absolutely that the town council cannot, under any other circumstances than those mentioned, prescribe the material to be used. In this case the repairing was done expressly under the police power. A sidewalk out of repair was declared by an ordinance to be a nuisance, and the town, on the idea contained in *Mayor* v. *Maberry*, 6 Humph. 368, proceeded to remove the nuisance by making ninety-nine feet of new pavement out of whole brick, on the failure of the owner to repair.

But there is an insuperable objection to maintaining the suit. The right to decide that the sidewalk is out of repair was not vested in the two street committeemen. This question was solely for the determination of the board of mayor and aldermen, and the power to do it could not be delegated by them. *Hydes* v. *Joyes*, 4 Bush, 464; *Bryan* v. *Chicago*, 60 Ill. 507. In the last case the point was expressly ruled.

The judgment of the court below, reversing the judgment of the mayor and dismissing the proceeding in which it was rendered, is                             *Affirmed.*