Williams *v.* Cammack.

DANIEL O. WILLIAMS v. R. B. CAMMACK, President, &c.

The act of the legislature of the 20th February, 1850, for the erection, repair, and preservation of levees on the Mississippi River in the county of Issaquena, which provides for "a uniform tax not exceeding ten per cent. per acre, upon all lands lying on or within ten miles of the river in said county, subject to taxation; and a. uniform tax of not exceeding five per cent. per acre on all lands in said county subject to taxation lying ten miles from the Mississippi River: " — *Held*, that neither the language nor the purpose of the act, nor the practical application of it to cases upon which it might operate, would justify the construction that lands lying more than ten miles from the river were not embraced by the latter clause.

The first article of the first section of the constitution of this State which declares that as a part of the organic law of the State, " that all freemen are equal in rights," and " that no men or set of men are entitled to exclusive, separate, public emoluments or privileges, from the community, but in consideration of public services: " — *Held*, that the principle here announced is that of equality in political rights, and a denial of all titles, privileges, honors, and distinctions from the community, but for public services; and it has no reference to the private relations of the citizens of the State, nor to the actions of the legislature in passing laws regulating the domestic policy and business affairs of the people.

This act simply exempts certain property from taxation on account of its locality, and operates upon the thing, not upon the person, and is neither an emolument nor a privilege to any particular individual or class of men in the community.

The power of taxation, whether for general or local purposes, and the mode and manner of exercising it, not within the prohibitions of the constitution, appropriately belongs to the legislatures of the States, which while exercised within the scope of the grant is subject to their discretion, with which the judicial tribunals have no right to interfere, because in their judgment the action of the legislature is contrary to the principles of natural justice.

Nothing is to be presumed in their favor in point of jurisdiction with respect to courts of special and limited jurisdiction; but a party asserting the jurisdiction may show that it existed, and it is incumbent on the party alleging the existence of the jurisdictional facts in such cases to show them. If they appear affirmatively of record, there is much diversity of opinion whether that is conclusive or merely *primâ facie* evidence of jurisdictional facts; but if they do not appear of record, it is well settled that their existence may be proved *aliunde.*

The statute providing for special meetings of the boards of police does not require that the record should show that the meeting was held upon notice

18*

given, but it would be more regular and advisable that the record should contain such an entry.

An act of the legislature which provides that if a majority of the legal voters of the county shall, by a certain time, enter their protest before the board of police against it, the act shall be of no binding force, does not by this proviso give force to the act, but it puts an end to its operation, if the voters choose to do so.

The object of this act was to raise money to construct the work, not to take the lands for public use, and this was a legitimate object of legislation, attempted to be effected by the exercise of the power of taxation, which, whether for local or general purposes of a public nature, was within the undoubted competency and discretion of the legislature. *Held*, that the act does not attempt to take private property for public use without compensation or consent of the legislature, in violation of the thirteenth section of the first article of the constitution.

The power to sell the land upon the failure to pay the tax assessed, is but a means to an end legitimate and proper in itself, a mere incident to the power of taxation.

In point of principle and constitutional power, there is no difference between taxes imposed for a general purpose and those imposed for a public local purpose.

It has repeatedly been held by other States, whose constitutions are similar to our own, and sometimes identical with the terms under consideration, that the legislature has the power to impose a tax on a local district for the construction of local public improvements, and that such acts are not in conflict with their constitutional restrictions.

The president of the board of police and the levee commissioners were enjoined from " collecting or proceeding to collect " the taxes upon the specified land of W., and after service of process on them, and during the pendency of the bill contesting the validity of the tax. *Held*, that the sale of the land was irregular, and should be set aside.

IN error from the superior court of chancery; Hon. Charles Scott, chancellor.

This was a bill filed by D. O. Williams to enjoin the collection of certain taxes, and complainant states that it was the duty of the board of police of Issaquena county, to appoint levee commissioners immediately, who were to be freeholders and residents of the county. These inspectors were to make and report estimates to the board of police, which was to assess the tax " not exceeding ten cents per acre on all lands lying on or within ten miles " of the river; and five cents per acre on all lands " lying ten miles from said river; " that by the provisions

of the law, which are recited, lands lying on the river outside of the levee, so as to be "without protection" by it, might be exempted from taxation; that if a majority protested against the act as provided in it, the act was to be void, the protest recorded and published, and a certified copy filed in the office of secretary of State.

He charges that the board of police did not appoint the inspectors immediately, not before June; does not know or believe that all who are appointed are freeholders; that the assessment was made before the estimates and facts were reported, and that they never were reported to the board of police; that they have assessed complainant's land lying "over ten miles" from the river. Complainant describes the land he owns by sectional divisions, and says they lie from eleven to fourteen miles from the river; portion of his lands lie on the east side of Deer Creek, and consist of a cypress brake which is valuable only because it is overflowed; while most of that east of Deer Creek was above all overflowed, protected by the creek and its banks, and no more benefited by the "levee" than Capitol Hill, &c.

Complainant insists that the act exempting lands in front of the levee is a grant of exclusive privileges, and so is unconstitutional. Those lands would derive equal benefit with his, from the levee.

He states that a protest signed by twenty-four voters was laid before the board of police, who decided it did not constitute a majority of the qualified voters; and the board complied with none of the provisions of the law in relation to such protest; that said twenty-four signers did constitute a majority of the legal voters of said county, so far as any official evidence within his knowledge will prove, and prays that Cammack, president of the board, may disclose how the board determined that the twenty-four were not a majority.

He prays for a *certiorari* to the clerk of the board of police to send up a complete record of the matters relating to the levee and assessment of taxes, and for an injunction against further proceeding in collecting said tax. He makes the president of the board and the five levee inspectors defendants, and prays for perpetual injunction on final hearing.

Cammack, president of the board of police, answered, and demurred to so much of the bill as related to the appointment and character of the levee inspectors; but answered asserting that they were appointed as soon after a copy of the law could be had as was convenient, and that each of them was a freeholder. He denies that no report or estimate was made; asserts that both were done, and the assessments predicated on it. He submits the verbal construction as to the lands lying over ten miles from the river to the court; admits complainant owns the lands, and that they have been assessed, their distance from the river, and their location and quality as stated; but denies that this court can enter upon the question as to whether they are benefited by the levee. Their assessment by the board of police is conclusive on that subject. The constitutionality of the law he submits to the court. Denies a protest by twenty-four voters; admits one by twenty-two; denies that they were a majority; asserts that there are one hundred voters in the county; denies the power of the court to inquire into the question.

The five levee inspectors answered jointly in substance the same with Cammack's.

On the 16th January, 1851, Williams filed a supplemental bill, stating that on the 13th of November, after service of the injunction, Johnston, sheriff of Issaquena, sold the lands of complainant to Parks, and made him a deed; Parks being one of the inspectors. That it was at a special term of the board of police that his lands were assessed, and the record does not show that ten days previous notice was given, and that no such notice was given.

The defendants answered, admitting the sale as charged, and a deed by Johnson, but whether after injunction served they are not advised; they insist the sale is legal and should be affirmed. They admit the tax was assessed at a special term, and admit the record does not show that the advertisement was made, but assert that in point of fact it was made.

In answer to a proceeding against them for contempt, the defendants deny any intentional contempt; they had no agency in the sale; it was made by the sheriff in the discharge of what he supposed to be his duty.

Williams v. Cammack.

Parks, to whom the deed was made, asserts that it was so made without his agency by the sheriff, who, under the law, felt himself compelled to bid off the land to Parks, who was treasurer of the levee inspectors.

Transcripts of proceedings of the board of police in July and in August are filed. They show the appointment of the inspectors, the assessment of the tax, the constitution of Parks, treasurer of the inspectors, &c.

Wm. T. Mills and Daniel T. Williams prove the locality of part of complainant's lands levied on for taxes; and assert that part could not be improved, and a portion would be injured by a perfect levee of the river. Mills proves that he was at the sale made by the sheriff of complainant's land; Parks and Wm. Dodds were present; he thinks Dodds bid on some of the land; neither Parks nor Dodds forbade the sale, nor stated that they were enjoined from selling; the sheriff read the injunction before he sold, but stated he would sell any how.

The chancellor dissolved the injunction and dismissed the bill, and Williams took an appeal to this court.

*D. O. Williams*, in proper person, filed a written argument.

*W. C.* and *A. K. Smedes*, for appellant, filed an elaborate brief, reviewing the law and facts of the case at length.

Mr. Justice HANDY delivered the opinion of the court.

The appellant filed this bill in the superior court of chancery, to enjoin the collection of a tax of five cents per acre, assessed upon his lands lying in Issaquena county, by the board of police of that county, by virtue of an act passed by the legislature, and approved on the 20th February, 1850, "to provide for the erection, repair, and preservation of levees on the Mississippi River, in the county of Issaquena."

The bill charges in substance, that the proceedings of the board of police were not in accordance with the act authorizing the levy of the tax, in many respects. First, it was made the duty of the board immediately after the passage of the act to

Williams *v.* Cammack.

appoint the levee commissioners, freeholders and residents of the county. But this duty was not performed until the month of July, and the persons appointed are believed not to be freeholders. Second, that the act made it the duty of the commissioners when appointed, "to estimate the probable cost of said levee or levees, and report the same to the president of the board of police, who shall levy and assess a uniform tax not exceeding ten cents per acre, upon all lands lying on, or within ten miles of said Mississippi River, in said county, subject to taxation; and a uniform tax of not exceeding five cents per acre on all lands in said county subject to taxation, lying ten miles from said Mississippi River," &c. But the board of police assessed the tax upon complainant's lands and were proceeding to collect it, without any estimate of the probable cost of the work or of the facts upon which it was based, being made by the commissioners, and reported to the board of police. Thirdly, that complainant's lands lying more than ten miles from the Mississippi River, were not subject to the tax, the act only applying to lands lying ten miles from the river. Fourth, that the eleventh section of the act which exempts from tax lands lying between the line of the levee and the Mississippi River, so as to be without protection from the levee, is unconstitutional, because it confers "exclusive privileges" on the owners of such lands. Fifth, that the twelfth section of the act provides "that if a majority of the legal voters, who are landholders or householders in said county, shall enter a written protest against the provisions of the act before the board of police, at their first meeting after the 4th of July next, (after its passage,) setting forth their objections to the act, then the act should be void, and of no binding force," and the board was also required to make this protest a matter of record, to have it published in the newspapers, and to furnish a certified copy of it to the secretary of State. The bill charges, that at the time specified in the act, a written protest, signed by twenty-four of the qualified voters of said county, who constituted a majority of said voters, was presented, objecting to the provisions of the act; but that the board determined that they did not constitute a

majority of such voters. The bill prays for discovery as to the means by which the board ascertained that the twenty-four signers were not a majority of the voters of the county.

The complainant alleges that his lands subjected to this tax, lie from eleven to fourteen miles from the Mississippi River; that a portion of them lie on the east side of Deer Creek, and consists of a cypress brake, subject to overflow, and valuable only on that account, and much the larger portion of the lands are above overflow, and in nowise benefited by the levee, only a small part of the back land being subject to overflow, and that the cypress brake is greatly injured by the levee.

The answers of the defendants, the president of the board of police, and the levee commissioners, admit that the levee commissioners were not appointed until the month of July, 1850, but state that the appointments were made as soon after an authentic copy of the act could be procured by the board as they conveniently could, all due diligence being used to have the appointments made at an earlier date, and that they were made in ample time; and they aver that the persons so appointed were at the time, and still are, freeholders, according to the provisions of the act. They deny that the commissioners did not make an estimate of the probable cost of the work, and report the facts on which the board were authorized to make the assessment, and aver that the estimate and report were made, and the action of the board predicated thereon according to the provisions of the act. They insist, that by a just and proper construction of the act, the complainant's lands, though lying more than ten miles from the Mississippi, are subject to the tax of five cents per acre assessed upon them; and admit the statements of fact in relation to the situation and character of the lands as set forth in the bill, but deny that they entitle him to any relief against the payment of the tax.

They admit that a written protest in opposition to the act, signed by twenty-two of the qualified voters of the county, was presented to the board, as stated in the bill, and state that no other protest was presented. They admit that this protest was not published in any manner, because they aver that it was not signed by a majority of the legal voters of the county, who

were more than three times the number of the signers to this protest, and that this was a notorious fact throughout the county, known personally to every member of the board of police, and made manifest by every election which has taken place in the county since its organization. They insist that the act is valid and constitutional, and that the proceedings under it have all been regular.

The complainant afterwards filed a supplemental bill stating, that after the issuing and service of the injunction granted on the original bill, upon the president of the board of police and the levee commissioners, the sheriff and tax collector of Issaquena county, proceeded to sell the lands mentioned in the bill, in violation of the injunction, for the payment of the taxes in controversy, and has executed a deed for the same to George N. Parks, one of the defendants, for the use of said levee commissioners, which deed and sale, he prays may be set aside and declared void. It further states, that it was at a special term of the board of police, that the lands in question were assessed, and that the record of said board of police does not show that ten days previous notice, posted at the court house door of said county, had been given for the convention of said board of police, and that no such notice was given as is required by law.

The defendants answer and admit the sale of the land by the sheriff, but cannot state whether it was after he had received and served the injunction. They claim that the sale was made in good faith and in accordance with the law, and should stand. They admit that the lands were assessed at a special term of the board of police, and that the record of the board does not show that ten days previous notice of the meeting of the board had been given as stated by complainant, and they aver that such notice was duly and legally given, and insist that it is not required to be shown by the record that it was given.

It appears by an exhibit in the record that the levee commissioners made their estimate and report to the board of police, which was received and acted upon by the board. The facts stated in the original bill, in relation to the situation and character of the complainant's lands, were established by testimony; and it is also shown that the complainant's lands were sold by

the sheriff for the levee taxes, after the injunction had been received and served by him on the defendants; that the sale was made in the presence of two of the defendants, the levee commissioners, one of whom was Parks, to whom the deed was made, and that they used no effort to prevent the sale, but permitted it to be made.

Upon the final hearing, the chancellor dismissed the bill, and the complainant took this appeal.

Several of the grounds of relief set up in the original bill are met and obviated by the answers, and appear not to be insisted upon here by the appellant. Our attention will, therefore, be directed to such points of objection only as have been presented here in his behalf.

The first of these objections is, that the act did not authorize a tax for levee purposes, upon land lying more than ten miles from the Mississippi River.

The act authorizes " a uniform tax, not exceeding ten cents per acre upon all lands lying on or within ten miles of the river in said county, subject to taxation; and a uniform tax of not exceeding five cents per acre on all lands in said county subject to taxation, lying ten miles from the Mississippi River." Taking these two clauses of the act together, we do not think that there is any room for doubt as to the intention of the legislature. It is clear that a rule of taxation was prescribed for all taxable lands in the county, first, as to the lands lying on the river, or within ten miles of it, and secondly, as to all the lands in the county lying beyond that range. Neither the language nor the purpose of the act, nor the practical application of it to cases upon which it might operate, would justify the construction, that lands lying more than ten miles from the river were not embraced by the latter clause. Such a construction would render the clause nugatory, for if the lands lay within ten miles from the river, they would be covered by the prior clause, and be subject to a tax of ten cents per acre; and by this construction, if they lay beyond the line of ten miles distance from the river, they would be subject to no tax, so that there would be no lands upon which this clause could operate but those immediately on the line at ten miles distance from the river, which,

being practically incapable of measurement, could not be subject to taxation.

The next objection is, that the eleventh section of the act, exempting from taxation lands lying between the river and the levee, confers exclusive privileges upon the owners of such lands, and is therefore in violation of the first section of the first article of our constitution.

If this were admitted, it would not destroy the whole act, for it is well established, that one part of an act may be unconstitutional and void, and other parts of the act, not necessarily dependent upon it, be valid. And this objection, while it might be good ground for subjecting the property referred to to the tax, furnishes no sufficient reason why the appellant's lands, not embraced by the obnoxious section of the act, should not be subjected to the operation of those parts of the act embracing them, and which are in themselves not liable to constitutional objection.

But the section in question is not liable to the objection urged against it. The clause of the constitution referred to declares, as a part of the organic law of this State, "that all freemen are equal in rights," and "that no man or set of men are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services." The principle here announced is that of equality in political rights, and a denial of all title to individual privileges, honors, and distinctions from the community but for public services. It was directed against superiority of personal and political rights, distinctions of rank, birth, or station, and all claims to emoluments from the community, by any man or set of men, over any other citizen of the State. It declares that honors, emoluments, and privileges of a personal and political character, are alike free and open to all the citizens of the State. But it has no reference to the private relations of the citizens, nor to the action of the legislature in passing laws regulating the domestic policy and business affairs of the people, or any portion of them. Such matters are left, with but few limitations, to the discretion of the legislature. Nor has this doctrine any application to the act of the legislature under consideration,

because no " exclusive, separate public emoluments or privileges" are conferred by the act upon " any man or set of men." The act simply exempts certain property from taxation. It operates upon the thing, not upon the person, and is neither an emolument nor a privilege to any particular individual or class of men in the community, for it passes with the property to any and all persons to whom the land may be conveyed. The legislature, for reasons that appear to be just, have seen proper to exempt from the burdens of this act a certain description of property which could not, in all human probability, be in anywise benefited by the work proposed. In the operation of the act, it appears also that other lands subject to its provisions, are not benefited, but are even injured. So the exemption of every species of property from taxation, which is so frequently done by legislative acts, operates prejudicially upon those not having such property, and who are subjected to increased burdens by reason of the exemption. It is also of common occurrence that legislative acts designed for the general good, work the most serious injury to the interests of individuals. These may be hardships, but they are inconveniences incident to society, and a part of the sacrifices which every one must make in order to enjoy the greater advantages of law and government. These hardships may be a very good reason to induce the legislature to repeal the oppressive act, but they do not therefore render the act unconstitutional; for it is universally conceded that the power of taxation, whether for general or local purposes, and the mode and manner of exercising the power, not within the prohibitions of the constitution, appropriately belong to the legislatures of the States. This power may be unwisely exercised or abused, yet it is a power intrusted by the constitution to the legislature, which, while exercised within the scope of the grant, is subject alone to their discretion, with which the judicial tribunals have no right to interfere, because, in their judgment, the action of the legislature is contrary to the principles of natural justice. *Calder* v. *Bull,* 3 Dall. 386; *Lansing* v. *Smith,* 8 Cow. 146; *Providence Bank* v. *Billings,* 4 Peters, 514; *Wilson* v. *Mayor of New York,* 1 Denio;

*Godden* v. *Crump,* 8 Leigh, 120; 24 Wend. 65; 9 B. Munroe, 526.

Another objection is, that the protest in opposition to the act, was *not recorded and published* as was required by the act. This was only required to be done in case a protest, signed by a majority of the legal voters who were landholders or householders in the county, should be presented to the board of police; and the answers, in response to the allegations of the bill, state that the protest presented was signed by less than one third of such voters. The answers not being disproved are competent evidence upon the point, and show that no such protest was presented as was required by the act or could be regarded by the board of police.

Again, the assessment of the appellant's land is said to be irregular, because it was done at a special term of the board of police, and the record of the proceedings of the board does not show that the meeting was held upon legal notice given. It is admitted by the answers that the notice does not appear affirmatively by the record; but the allegation of the bill that the meeting was held without legal notice being given, is emphatically denied by the answers, which aver that due and legal notice of the meeting was given, and of this there is no proof to the contrary.

It is insisted by the appellant, that the jurisdiction of the board depended upon the notice of its meeting, and that that fact must affirmatively appear of record, otherwise there was no jurisdiction, and the proceedings are, therefore, void. We cannot sanction this proposition. It is true, with respect to courts of special and limited jurisdiction, that nothing is to be presumed in their favor in point of jurisdiction. But it is equally true that a party asserting the jurisdiction may show that it existed. 3 Phill. Evid. 2d edit., Cowen & Hill's Notes, 906, and cases there cited. It is incumbent on the party alleging the existence of the jurisdictional facts in such cases to show them. If they appear affirmatively of record, there is much diversity of opinion as to whether that is conclusive, or merely *primâ facie* evidence of the jurisdictional facts. But if they do not appear

of record, it is well settled that their existence may be proved *aliunde.* 3 Phill. Evid. 1013, 1014, 1015; *Rex* v. *All Saints*, 1 Mann. & Ryl. 668; *Mills* v. *Martin*, 19 J. R. 33; *Rex* v. *Hulcott*, 6 T. R. 583.

The statute providing for special meetings of the boards of police, does not require that the record shall show that the meeting was held upon notice given. It would certainly be more regular and advisable that the record should contain such an entry. But such records are too often kept in an informal manner and by inexperienced persons, and should be considered with every indulgence that the law will permit. To apply rigid, technical rules to such proceedings would seriously embarrass the administration of the business appertaining to such tribunals, and produce most unjust and mischievous consequences. If the substantial requirements of the law have been complied with, we do not think it proper to countenance technical objections to the proceedings of tribunals like these; and as it sufficiently appears here that the meeting was held after the notice required by law had been given, we think the meeting is thereby shown to have been legally held, notwithstanding the record did not show that previous notice was given.

Again, the appellant insists that the act in question was not a valid legislative act, because, by the twelfth section, its operation depended upon the determination of a majority of the voters of the county as to whether it should become a law or not. This objection is founded in a misapprehension of the provision of the twelfth section. The act in its terms possessed every essential quality of a complete and operative legislative act. Nothing was required to be done by the people to give it force and effect. Being thus complete and effective, the twelfth section provided, that if a majority of the legal voters, who were landholders or householders of the county, should enter a written protest against its provisions before the board of police at their first meeting after the fourth of July, the act should become void, and of no binding force. This protest certainly gave no force to the act, but was intended expressly to put an end to its operation. If the provision had been that the act should not have any effect until a majority of the voters should sign their

19 *

written assent to it, the objection would have more force. But no such condition was annexed to it. Being a local act, affecting only the property holders of the particular county and intended for their benefit, it was provided that they should have the privilege of putting an end to its operation in the manner prescribed by the act, otherwise that it should continue. It derived no legislative force from the action of the voters, but quite the reverse. While the act, therefore, is liable to no technical objection by reason of its depending for its legislative force upon the sanction of the voters, we can perceive nothing unjust or illegal in the policy of submitting to the determination of those intended to be affected by it whether they will carry out its provisions. We think, therefore, that there is no force in this objection.

Another objection urged against the constitutionality of the act is, that under it private property is taken for public use without the consent of the owners and without just compensation, in violation of the 13th section of the 1st article of the constitution.

In determining the validity of this objection, we have but to consider the scope and object of the act, the end intended, and the means by which it was designed to be accomplished. It is manifest, from an examination of the act, that its sole object was to establish a work of improvement to the lands in the county of Issaquena, for the general good and benefit of all persons interested in lands lying within the county. This end was proposed to be effected by a tax imposed upon the property intended to be benefited by the work. In this there is certainly no semblance of taking private property for public use, either within the letter or the spirit of the constitution. The object was to raise the money to construct the work, not to take the lands for the public use; and this was a legitimate object for legislative action, and was attempted to be effected by the exercise of the power of taxation, which, whether for local or general purposes of a public nature, was within the undoubted competency and discretion of the legislature. *Thomas* v. *Leland*, 24 Wend. 65; *Livingston* v. *Mayor, &c.*, 8 Ib. 101; *Harrison* v. *Holland*, 3 Gratt. 347; *Norwich* v. *County Commis-*

Williams *v.* Cammack.

*sioners,* 13 Pick. 60; *Sharpless* v. *Mayor of Philadelphia,* Harris, R. 1853.

If the taxes authorized by the act, and assessed under its provisions, were paid, the means are supplied to accomplish the work as contemplated, and all difficulty is removed. But it was necessary and proper that provision should be made for the contingency of failure or refusal to pay the assessments; and this was done by the ordinary provision, that in such cases the property should be sold for the taxes, and the means thereby furnished to carry on the work. What sound objection can there be to this? It is but a means to an end, legitimate and proper in itself, — a mere incident to the power of taxation, and a remedy for its enforcement, without which the power itself would fail. How else could the power be exercised, and be free from the objection here urged? Not by ordinary suit, judgment, and execution at law; for if a party's land were levied upon under such an execution, and sold for the taxes, the same objection would arise, that private property was thereby taken for public use without just compensation. And there is as much reason for saying that just compensation was not made in the one case as in the other. If, then, the remedy for collecting delinquent taxes had been fixed by the act to be by suit at law, instead of sale by the sheriff in a summary manner, this objection could be urged with equal force to that mode of proceeding. The consequence of this would be, that there would be no mode of collecting the tax under our constitution and laws; and thus a tax duly and constitutionally imposed would fail for want of a means of enforcing it, and we would be brought to the absurd and anomalous conclusion, that the government would be without power to collect taxes imposed for the public good, and for purposes authorized by the constitution, whenever it should become necessary to the collection to sell the property of a recusant citizen, because it would be taking private property for public use without just compensation. In point of principle and constitutional power, there is no difference between taxes imposed for a general purpose and those imposed for a public local purpose. The same power exists in both cases, as is abundantly shown by the authorities

above cited, and the same means of enforcing it must also exist; so that this objection would equally apply to all laws for the collection of revenue for the support of government, or for general public works, and, if permitted to prevail, would destroy all government.

The authorities above cited show that it has been repeatedly held by courts of great learning and ability in States whose constitutions contain provisions similar to our own, and sometimes identical with the terms under consideration, that the legislature has the power to impose a tax on a local district for the construction of local public improvements, and that such acts were not in conflict with these constitutional restrictions. To these many other learned and conclusive decisions may be added. *People* v. *Brooklyn*, 4 Comst. 419; *Shaw* v. *Dennis*, 5 Gilman, 405; *Bridgeport* v. *Housatonic R. R. Co.*, 15 Conn. 475; *Cinn. W. & Z. R. R. Co.* v. *Clinton County*, lately decided in the supreme court of Ohio; and which have recently been sanctioned by this court in the case of *Strickland* v. *Miss. Central R. R.**

Nor is it any objection to the constitutionality of the act, that it operates injuriously upon the appellant. Every revenue bill, and every work of public improvement, must more or less have such an effect. But they must be submitted to as the necessary action of the machinery of government, and as individual sacrifices to the general good, in order that the advantages of the social compact may be enjoyed. This principle rests in the very foundations of society, and is illustrated in every day's experience of the citizen yielding his natural rights, even of life, liberty, or property, to the public good. But he can only claim immunity when it is secured to him by the principles of the constitution.

Having thus disposed of the objections taken to the act, and the proceedings in assessing the tax, the only remaining point to be noticed is the regularity and validity of the sale of the appellant's lands pending the injunction. By this process, the defendants, the president of the board of police and the levee

* Note by Reporter. Which case was not reported.

commissioners, were enjoined "from collecting, or proceeding to collect," the tax upon the specified lands of the appellant. Notwithstanding this, and after service of the process, and while the bill contesting the validity of the tax was pending, the appellant's land was sold by the sheriff in the presence of two of the commissioners, who used no effort to prevent it, and was struck off and conveyed to one of them. This was obviously a violation of the injunction; for even if it was the duty of the sheriff to sell, notwithstanding the injunction, that duty was to the commissioners, and it was a violation of the injunction on their part to permit the sale to be made. But the sheriff was not required by the act to perform any act which the commissioners were prohibited by legal means from doing. The sale was therefore irregular, and should be set aside, and the sheriff's deed cancelled, upon the appellant paying to the levee commissioners the amount of tax due at the time of filing the bill, and such further taxes as were assessed and due upon the lands for levee purposes, in virtue of the act, up to the time of the final decree of the chancery court in the case.

The decree is reversed, and a decree in this court ordered accordingly.