## W. L. NUGENT ET AL. *v.* THE CITY OF JACKSON.

1. CODE 1892, § 3011. *Words omitted in printing. Effect.*

   Between "if" and "the," in line 7, § 3011, code 1892, as published (dealing with special assessments by municipalities), the words "a majority of" are omitted. These words appear in the code as adopted and on file in the office of the secretary of state, and it must control. Code 1892, § 2; *Ex parte Wren,* 63 Miss., 512.

2. MUNICIPALITY. *Special assessment; protest. Code 1892, §§ 3011, 3012.*

   Under §§ 3011, 3012, code 1892 relating to local or special assessments, the privilege of preventing an improvement is not given to any one property owner. This can only be done by a written protest filed by "a majority of the resident owners of the property on said street, avenue, alley, sidewalk, or part thereof, to be benefited by such improvement," the words "a majority of" being in the code as adopted.

3. SAME. *Power. Special assessments. Validity of legislation.*

   The validity of legislation such as the above sections of the code, providing for special assessments, and investing the local author-

ities with the discretion of judging as to the necessity for the improvements, and with power to levy and apportion the charge therefor. subject to certain just limitations to be interposed by the courts in proper cases. is unquestionable.

4. MUNICIPALITY. *Power of courts. Abuse of discretion by local authorities.*

Courts are not invested with discretionary powers of determining when highways shall be improved. In the matter of local improvements and special assessments therefor, they can only interfere in cases of fraud or oppression, or some such wrong as constitutes a plain abuse of discretion on the part of the local authorities. *Macon* v. *Patty,* 57 Miss.. 378.

5. SAME. *Notice to owners. Due process of law. Code* 1892. §§ 3011, 3012.

Under §§ 3011, 3012, code 1892, three weeks' notice, by publication, is required to be given of the resolution declaring an improvement necessary, and the owners of the property affected are given twenty days after the passage of the resolution within which to file a majority protest. which, if filed, prevents the improvement. · Not filing it. they are given twenty days after the complete publication of the resolution within which to make the improvement, and, failing in this, on five days' final notice, the municipality is empowered to make it. Assuming notice to the owners to be necessary, this is sufficient.

6. SPECIAL ASSESSMENTS. *Equality and uniformity of taxation. Constitution* 1890, § 112, *not applicable.*

In the imposition of special assessments, as for making sidewalks, the rule of equality and uniformity prescribed by § 112, constitution 1890, as to ordinary taxation, is not required to be observed. *Daily* v. *Swope,* 47 Miss., 367.

7. SAME. *Necessity; municipal authorities judge of. Code* 1892, § 3011.

In respect to the special assessments provided for therein, § 3011, code 1892. makes the municipal authorities the judge of the necessity for the improvements, and not merely of whether the same will be beneficial to the property owners. The right to impose such assessments does not rest solely on the idea of benefit to them. *Macon* v. *Patty,* 57 Miss., 378.

8. SAME. *Distinction between streets and sidewalks. Police power.* ·

There is a wide distinction between the authority to impose special assessments for the improvement of streets and the improvement

of sidewalks; the latter can be maintained under the police power. *Macon* v. *Patty*, 57 Miss., 378.

9. STATUTE. *Defectively expressed. Duty of court to uphold. Code* 1892, §§ 3011. 3012.

Though a statute be awkwardly expressed, and subject to criticism, it will be upheld if this can be reasonably done. The validity of §§ 3011. 3012, code 1892, as to special assessments by municipalities sustained

FROM the chancery court of the first district of Hinds county. HON. H. C. CONN, Chancellor.

Appellants are seized and possessed as joint tenants of the south half of two-acre lot five, north, in the city of Jackson, Mississippi, the same being occupied by them as a residence. The lot fronts on State street, on the east, one hundred and sixty feet, and runs back west three hundred and twenty feet to President street, being bounded on the south by High street.

On June 7, 1893, the mayor and board of aldermen of said city of Jackson passed the following ordinance:

"SECTION 1. Be it ordained by the board of mayor and aldermen of the city of Jackson, that improvements which re quire unusual outlay, and costs in excess of the general improvement funds to the city, are necessary in the building of sidewalks along the south side of Barksdale street; along the north side of High street, from Jefferson to West street; along the south side of Asylum street, from State to President street; along the west side of President street, from Fortification to High street; along the east side of Roach street, from the A. & V. R. R. to Capital street; along the south side of Capital street, from the east side of I. C. Enoch's property to Minerva avenue; along the south side of College, from Jefferson to State street; along the north side of College street, from State to North street; and along the east side of Gallatin street, from Pearl street to the corner of George Lemon's property; and the footways, or sidewalks, along said streets above mentioned and described are hereby declared to be public nuisances, and

said nuisances shall be abated by the owners of the lots of land lying along and adjoining and fronting and abutting on said streets and footways and said sidewalks by the building of suitable and proper sidewalks, as required in the next section of this ordinance.

"SEC. 2. The owner of each of the several lots of land lying alongside, fronting or abutting on the footways or sidewalks on the several streets described in the first section of this ordinance, is hereby ordered and required, at his or her own expense, to grade, construct and hereafter keep in good repair, a sidewalk along the entire side or front of his lot, or lots, so fronting, lying along or abutting on the said streets, within twenty days after this ordinance becomes operative; *provided,* that if the owner of any lot shall have heretofore constructed a sidewalk of brick along his lot in substantial compliance with the requirements herein, and keeps the same in repair, it shall be deemed a compliance herewith. Said sidewalks shall be of uniform width along said streets, and so graded as to make an even, smooth footing, inclined upwards from the outer edge towards the lot, one inch to each three feet, and shall be closely paved with well-burnt brick. They shall conform in grade, width and appearance, as near as practicable, to adjoining brick pavements and sidewalks. If any owner or owners of any lot or lots lying along, fronting or abutting on said streets and sidewalks, shall fail or refuse to construct such sidewalk as is herein required, within said time, the street commissioner shall, after the expiration of said twenty days, and after giving five days' notice to the owner or occupant of the lots in front of or along which no sidewalks have been constructed as above required, proceed, at the expense of the city, to have said sidewalks constructed as above required, under the cheapest and best contract possible, and he shall keep a strict account of the actual cost of making said improvement along or in front of each lot, and shall make an accurate report of the said costs to the mayor and board of aldermen at the next regular meet-

ing after the completion of the work, for their approval; and special assessment of the said costs, with ten per cent. interest additional, shall be made against the lot or lots so improved, each lot to be assessed in proportion to the number of feet alongside or in front of which the walk is laid.

"Sec. 3. That this ordinance take effect and be in force from and after its passage."

Appellants, after being notified, having failed to construct the sidewalk on the south side of their lot, the city authorities proceeded to construct the same in pursuance of the ordinance. On November 30, 1893, after the sidewalk had been nearly completed, the appellants filed this bill in the court below, to enjoin the city from doing the work. The bill averred that the sidewalk was being constructed without their consent, and against their objection; that the same was of no benefit to them, and they protested against its being put down at their expense. It further averred that the ordinance under which the improvement was sought to be made was illegal, unreasonable, and void, and that complainants, within twenty days after the passage of the ordinance, had duly filed their written protest against the construction of the sidewalk. The city answered the bill, asserting the legality of the ordinance, and averring that the sidewalk in question was a necessary public improvement. The answer also denied an allegation of the bill that the sidewalk constituted a part of the lot of complainants, and averred that it was a part of the public street.

After testimony taken, a motion was made by defendant to dissolve the injunction on bill, answer and proofs. The motion was sustained, and from a decree dissolving the injunction, complainants prayed and obtained this appeal. The evidence showed that the inclosure of complainants, on the south side of their lot, was not in line with the street as surveyed, but that the fence inclosed all the land called for in complainants' deed, and that the land on the south side, where the sidewalk was laid, had been on the outside of the inclosure, and considered a

part of the highway about fifty years, though there had only been a dirt walk at this point, which was not much used by the public, this being a side street.    Appellants had laid a sidewalk in front of their property on State street, and their testimony tended to show that the walk on the south side would not benefit their property.    The opinion contains such further statement as is necessary for the understanding of the questions decided.

*Nugent & Mc Willie*, for appellants.

All that is said in the ordinance about a nuisance is put in as a cover for the exercise of unwarranted jurisdiction.    If there was a nuisance, no notice was ever given appellants to abate it. But it is absurd to assume that a dirt sidewalk could be a nuisance.    It cannot be seriously contended that the authorities of a town can, by arbitrary ordinance, destroy private property as a nuisance, unless, on proper notice, it is shown to be such by its location or the sanitary conditions surrounding it.    42 Miss., 493; 10 Wall., 505; 23 Am. R., 609; 16 Am. & Eng. Enc. L., 937; 1 Dill. on Mun. Cor., § 308.

There has never been a general assessment of the property under § 2926, code 1892.    Section 2944 empowers the city to cause to be constructed and maintained sidewalks, to determine materials and plans therefor, and to collect taxes by special assessment for payment of same.    The ordinance in question was not adopted under this section, and, therefore, it is not to be considered.    The language used in the title and in the first section of the ordinance places justification upon § 3011, code 1892.    Appellants took advantage of this statute, and filed their protest against the improvement.    Unless the court is to alter the purport of the ordinance, and do that which was not attempted to be done by the authorities, the decree should be reversed.

Appellants agree that the rule as to sidewalks in front of one's residence, on a public street, in general allows municipal authorities to compel the owner to lay the walk at his own ex-

pense.   This rests upon the predicate that the property is ben-
efited, and that all owners of lots along the same street must
contribute to the improvement.   In the able opinion in *Macon*
v. *Patty*, 57 Miss., 378, this court stated that the owners of
property sought to be taxed, must be consulted before action
is taken against them, even in the case of sidewalks in front of
lots.   The appellants have laid the sidewalk in front of their
lot.   The ordinance in question requires them to build a side-
walk three hundred and twenty feet long on the side of their
lot.   In this they are not interested, nor is it a benefit to them
or their lot.   On the contrary, it detracts from the enjoyment
of their property.   It diminishes the value of the lot by de-
stroying the privacy of the premises.   In *Macon* v. *Patty* it is
stated that the improvement of a sidewalk in front of the lot
may be imposed as a police duty.   That doctrine has no appli-
cation, because the owners here were given twenty days within
which to file a protest, which involves the idea of consultation
and consent.

Opposite counsel, in the court below and here, have steered
away from § 3011, under which the ordinance was passed, and
attempt to justify the action of the city under § 2944.   Section
3012 provides the character and extent of the special assess-
ment authorized to be made, but it was wholly ignored in the
adoption of this ordinance.

The power conferred by § 2944 of the code is vast in its
scope.   If its exercise rests wholly in the discretion of the
authorities, to what extent may they not go?   The vital ques-
tion in this case is this:   Can the city, for the benefit of the
public, even under § 2944, impose upon appellants, without
notice or opportunity to be heard, the burden of laying a brick
sidewalk, three hundred and twenty feet long, on the side of
their property, when this is not a benefit, but an actual injury
to them?   As to the necessity of notice, the case of *Ulman* v.
*Baltimore*, 20 Atl. Rep., 141, is expressly in point.   Neither
the code nor the ordinance provided for any notice.   The or-

dinance was passed and published before appellants knew anything about it.  As to this, see *Walston* v. *Nevin*, 128 U. S., 578; *Palmer* v. *McMahan*, 133 *Ib.*, 660, and the authorities there cited.

It is immaterial whether a different result would have been reached by the authorities if the appellants had been notified beforehand.  The constitutionality of a law is to be decided, not by what has been done, but by what may be done under its authority.  74 N. Y., 183.  The supreme court of the United States has been consistent in holding that, under the fourteenth amendment, notice is necessary in cases similar to this.

Local assessments, when allowable at all, must have reference to the special benefits accruing to the property to be improved, in addition to those received by the community in general. *Macon* v. *Patty*, *supra*.  The precise thing is attempted here that was said in that case to be beyond the power of the municipality.  There was no effort to apportion the cost of improvement among the lots north and south of the streets, but appellant's lot is sought to be charged with the whole burden.  On this point see 2 Dillon on Mun. Cor., §§ 752–765, and authorities cited.

Section 2944 of the code refers to "special assessment," but it is not indicated what the term means.  As to the special improvements authorized by § 3011, the next section defines the mode of making them.  Nowhere else are special assessments referred to.  It cannot be successfully claimed that the phrase "special assessment," as used in § 2944, has such a well-recognized signification as to incorporate necessarily into the statute the meaning claimed.  Therefore, the city was not, in terms, authorized to levy the tax in question.  No special mode being indicated, the levy must be general in character, and applicable to all taxpayers.  The authority to levy taxes, or to make local assessments, does not exist unless specially conferred. 1 Dillon on Mun. Cor., § 89 *et seq.*  Grants of power to make local assessments are strictly construed, and must be strictly

followed. 51 Miss., 302; 37 Wis., 645; 43 *Ib.*, 63. So jealous is our constitution on this subject, that it requires provision to be made by general laws to prevent the abuse by cities and towns of the power of taxation, contracting of debts, etc. Const. 1890, § 80. Section 112 requires that taxation shall be equal and uniform throughout the state. This section covers the case at bar, and destroys the pretense that the improvement in question was one for local purposes and justifies appellee in imposing the burden on appellants against their will. On this point, see *Mobile* v. *Dargan*, 45 Ala., 310; Cooley's Con. Lim., pp. 630, 631. This learned jurist, commenting on the case of *Warren* v. *Henly*, 31 Iowa, 31, holding the opposite view from that for which we contend, states that the judge who delivered the opinion conceded his inability to support his conclusions by authority.

The legislature did not authorize the plan of assessment adopted by appellee, and it cannot, by giving an extended meaning to the words "special assessment," claim the right to adopt the front foot plan authorized in some states.

*Williamson & Potter*, for appellee.

The city authorities were proceeding under authority expressly given by the legislature. If the expenditure of money is required for improving streets, the adjoining land may be assessed, when it receives a special benefit, though the public may be incidentally benefited. Elliott's Roads & Streets, 369, note 1, and authorities cited; *Ib.*, 370.

Whatever may be the true theory upon which the right to levy local assessments may be vindicated, the right exists. Dillon on Mun. Cor., § 761; Cooley's Con. Lim., 619; Hare's Am. Const. L., 301; *Macon* v. *Patty*, 57 Miss., 378; 13 R. I., 50; 38 La. Ann. 328; 81 Va., 4731; 21 Ark., 40; 28 Cal., 342; 2 Ore., 146; 8 Ohio St., 333; 25 Mo., 593; 14 Wall., 676; 44 Pa., 113.

Sections 2944, 3012, code 1892, confer full power to make

special assessment for the improvement of streets and side-
walks. The ordinance in question was passed in strict ac-
cordance with the statute, and proper notice was given com-
plainants. The fact that they protested itself shows that they
had notice.

Municipal authorities are the exclusive judges of the man-
ner in which highways shall be made. Elliott's Roads &
Streets, p. 375, note 1, and authorities cited. So long as there
has been no fraud, oppression, or other such wrong, consti-
tuting abuse of discretion, the courts cannot interfere. *Ib.*, p.
375. When the property adjoins the street or sidewalk im-
proved, it may be said, as a matter of law, that it is benefited.
*Ib.*, 391, 392. The weight of authority is overwhelmingly in
favor of the right of the legislature, and of the local authori-
ties when the power is delegated to them, to determine what
property shall be specially assessed, and how the apportionment
shall be made. *Ib.*, 393, note 2. In cities and towns, it is es-
tablished that the front foot assessment is valid. *Ib.*, 394,
note 4.

A sidewalk is part of the street, and can be improved at the
expense of the adjoining lot owner. Elliott, 17, 18, 20, and
authorities citied in the notes. The record shows that it has
been the uniform custom to improve the sidewalks along the
streets, in Jackson, at the expense of the adjoining property
owners. Other owners along High street were compelled to
construct sidewalks in front of their property. No injustice is
done complainants, and they have no right to insist that the
sidewalk along their property shall be improved at the com-
mon expense when their fellow-citizens have constructed their
own sidewalks.

WHITFIELD, J., delivered the opinion of the court.

Sections 2925, 2957, inclusive, code 1892, contain a specific
enumeration of powers, thirty-two in number, conferred on
each municipal corporation governed by the provisions of chap-

ter 93 of said code, on municipalities. Among these powers is the one conferred by § 2944, which provides that the mayor and board of aldermen of each municipality shall have power "to cause to be constructed and maintained sidewalks, determine the materials, plans and specifications and grades of the same, and to levy and collect taxes, by special assessment, for the payment of the same." This section confers the power, and §§ 3006, 3011, 3013, prescribe the mode in which the power is to be exercised. All these sections must be treated together as propounding one general scheme. The phrase, "special assessment," has a well-ascertained meaning in legislation on this subject-matter, and means, as shown by the context in which it stands, "assessment specially" imposed for the "construction and maintenance of sidewalks," etc.—the usual local assessment for such purposes.

Counsel for appellants earnestly contend that, under § 3011, code 1892, the "power to cause such improvement to be made," etc., cannot be exercised, as against any "resident owner of property on said sidewalk," etc., if such owner shall, "within twenty days after the passage of the resolution, file with the clerk his protest, in writing, against such improvement." He refers us to no authority, and cites only § 3011 as it stands. On the face of this section, as it stands in the printed code of 1892, it would seem that the "power to cause such improvement to be made" would, on this idea, as applied to the language of this section exist, unless all the "said resident owners of property filed such protest." So great is the obscurity of this section, however, and so difficult of satisfactory explication the scheme propounded by it and § 3012, that we have given unusual pains to the consideration of the subject, and we find in the "duplicate of the annotated code of 1892, deposited in the office of the secretary of state, . . as the code of public statute laws of this state" (Code 1892, § 2), and in *Williams* v. *Cammack*, 27 Miss., 209, what clears up the whole matter. The fact is revealed by the said duplicate of the annotated

code of 1892, that between the words "if" and "the" in the seventh line of § 3011 of the code of 1892, as printed, the words "a majority of" have been left out in the publication, thus changing the entire sense of the section.　　It appears from said duplicate code, on file in the office of the secretary of state, which shows the law as it now is, and the corrections made by the legislature in the draft of the code of 1892, as prepared by the commissioners who framed it, that said draft of said code originally provided that if the protest was made by two-thirds of the resident property owners, the power to make the improvement should not be exercised, and that the legislature changed this so as to defeat the exercise of the power in case a majority of said resident property owners should protest, etc. There being a conflict in this respect between § 3011 as it appears in the printed code of 1892, which requires that all the resident property owners should protest, and the said duplicate code, which only requires that a majority shall protest, the said duplicate must prevail.　　Code of 1892, § 2; *Hunt* v. *Wright*, 70 Miss., 298; *Ex parte Wren*, 63 *Ib.*, 512.　　Section 3011, therefore, does clearly provide that "if a majority of the resident owners of the property on said　.　. sidewalk, or part thereof, to be benefited by such improvement, do, within twenty days after the passage of the resolution, file with the clerk their protest, in writing, against such improvement," then the board shall not have the power to cause it to be made, etc.　　That this is the true construction of the section, is shown by *Williams* v. *Cammack*, *supra*, where, in speaking of a similar provision as to a majority protest, in the law under discussion there, as to levee assessment, the court says: "This protest certainly gave no force to the act, but was intended expressly to put an end to its operation.　If the provision had been that the act should not have any effect until a majority of the voters should sign their written assent to it, the objection" that the act had no binding force until a majority assented, "would have more force.　But no such condition was annexed to it.　Being a

local act, affecting only the property owners of the particular county, and intended for their benefit, it was provided that they should have the privilege of putting an end to its operation, in the manner prescribed in the act; otherwise, that it should continue. It derived no binding force from the action of the voters, but quite the reverse.'' So that a majority of the said resident property owners, not having in this case, exercised their undoubted privilege of putting an end to the exercise of the power to make the improvement, by filing their written protest as provided, it is immaterial that only the appellants protested. The protest must be the protest of a majority, as aforesaid, to be effectual. "A majority," that is, "of the property owners on the sidewalk, or part thereof, to be benefited by the improvement, along the whole distance on each separate street along which the sidewalk is directed to be improved." Of course, the majority of the property owners means the majority of property owners on each sidewalk, considered separately from every other sidewalk; and "part thereof" means that part of the sidewalk ordered to be improved—such part in its whole distance. So construed, the statute gives the privilege of putting an end to the operation of the ordinance, to a majority of all those property owners interested in the improvement, by ownership of property abutting on said sidewalk, or part thereof, anywhere along it, within the whole distance of said sidewalk, or part thereof, ordered to be improved. So construed, it is a wise and conservative statute.

The language of § 3011 is exceedingly awkward, and this section and § 3012, taken together, are very difficult of satisfactory construction; but we think the scheme fairly deducible from §§ 3006, 3011, 3012, 3013 is this: That, when any improvement which requires " unusual outlay and costs in excess of the general improvement fund " is deemed " necessary " by the mayor and board of aldermen, they shall so declare by " resolution," describing the improvement; that they are made

the "judges" of such necessity; that, having so declared the improvement necessary, they shall publish the resolution, as provided in § 3006, in some newspaper of the municipality, or, if there be no such newspaper, then by posting, etc., "for three weeks;" that property owners affected by the resolution shall have "twenty days after the passage of the resolution," during which time the said publication is being made, within which to file their written protest, in which, of course, they are to specify the grounds of their protest against the improvement, such protest, to be effectual to put an end to the operation of the law, to be signed by a majority of said resident property owners, etc.; that if such protest is so filed, the improvement is not to be made; that if it be not so filed, and the property owner "fail to make the special improvement within twenty days after the ordinance becomes operative," which must be held to be a period of time twenty days after the completion of the publication of the "resolution," and which may be more than fifty days after the "passage of the resolution," since it might not be promptly "published" on passage, then the "street commissioner" shall give the property owners "five" further "days'" notice "of the necessity" for the improvement, during which five days the property owners may conclude to do the work themselves; and, if they still decline, then the "street commissioner" shall proceed to "make the repairs," etc., the mayor and board of aldermen having, at some date subsequent to the expiration of twenty days from the completion of the publication, made "an order," directing the "street commissioner" to give such five days' notice, and then, in the case stated, to make such improvement, as directed in § 3012. This seems to us what is meant. This construction gives the property owner the longest time after the "resolution" is "passed." It may be some days before it is published; it must be published twenty-one days, and, surely, as the object of publication is notice, the rule elsewhere obtaining must apply here, that the full period of publication must have expired

before the "resolution" or "ordinance" can be deemed "operative." After the expiration of the twenty-one days of publication, the property owners still have twenty-five days within which "to make the special improvement" themselves. There may be said to be two notices here—the newspaper publication or posting, and the final five days' notice. The first character of notice is intended to give the said property owners opportunity to file their majority protest; the five days' notice is meant to give them that much further time in which to exercise their election as to whether they will "make" the improvement themselves or let the municipality do it.

We think the necessity for notice is satisfied by this ordinance within the principle laid down in the authorities holding notice necessary. Says Mr. Elliott (Elliott on Roads & Streets, p. 415): "The only defensible rule is that which requires that, at some stage of the proceedings before the judgment or decision becomes conclusive, the landowner should have notice, or an opportunity to be heard. We do not say that he is entitled to be heard on every question—far from that, for we do not believe he is entitled, as a fundamental right, to be heard on matters which simply affect the question of the regularity of the proceedings, but we do believe that, before the final determination, he is entitled to be heard upon questions which vitally touch the validity of the proceedings. . . But while we regard notice as indispensable, we do not believe that it need always be given during the initiatory or original proceedings; on the contrary, our judgment is, that, if it is provided for at some stage of the proceedings, and in such a mode as to give the party an opportunity to be heard before a final conclusion is reached, it will be sufficient." The publication and the opportunity to protest amply meet this requirement.

It is not necessary, in our view, to discuss the question of notice in this case, in the view of those authorities which hold that, "when the local authorities may arbitrarily decide that the improvement does benefit land to the extent of the expense

of making it," no notice is necessary (Elliott on Roads & Streets, p. 397)—a view said to be "unquestionably sustained by the weight of authority." Section 3011 makes the municipal authorities "the judge" of the necessity of the improvement, not necessarily of whether it be beneficial to the property owners. Indeed, the doctrine in our state, as enunciated in the masterly opinion of Chief Justice George in *Macon* v. *Patty*, 57 Miss., 378, is that the right to impose these local assessments does not rest solely on the idea of benefit, and cannot logically be upheld on that theory, but on the principle "that when certain persons are so placed as to have a common interest among themselves, but in common with the rest of the community, laws may be justly made, providing that, under suitable and equitable regulations, those common interests shall be so managed that those who enjoy the benefits shall equally bear the burden;" they are charges upon "property, inseparably incident to its location in regard to other property." There would seem, therefore, to be no force in the argument as to the necessity for showing that benefit is conferred by the improvement, with us. But, however this may be, we think on the question of notice, ample notice is here shown.

We cannot approve the contention that in this imposition of these local assessments the rule of equality and uniformity required by the constitutional provisions as to ordinary taxation is to be observed. The contrary view is thoroughly established. It is well said by Mr. Justice Field in *Hagar* v. *Reclamation District*, 111 U. S., 701: "The rule of equality and uniformity prescribed in cases of taxation for state and county purposes does not require that all property, or all persons in a county or district, shall be taxed for local purposes. Such an application of the rule would often produce the very inequality it was designed to prevent. As we said in *Louisiana* v. *Pilsbury*, 105 U. S., 278, there would often be manifest injustice in subjecting the whole property of a city—and the same may be said of

the whole property of any district—to taxation for an improvement of a local character.''

It is far too late to question now the validity of legislation like this imposing local assessments, investing the local authori-ties with the discretion of judging as to the necessity for the improvements, and with power to levy and apportion the charge. We adhere to the announcement in *Macon* v. *Patty, supra,* generally recognized now as sound, that '' these assessments are not within the unrestricted discretion of the legislature, but are subject to many and just limitations which the courts will enforce ''—an announcement extended and explained by Mr. Elliott, in his work on Roads & Streets, at page 375: '' It is quite clear that courts cannot, on principle, be invested with the discretionary power of determining when highways should be improved; of necessity, the power must reside in some lawful body, and in no other can it be more appropriately placed than in one selected by or coming from the immediate vicinity of the highway to be improved. Local officers are nearer the persons and property affected, they have a closer knowledge of the wants of the community, they are more directly under the supervision of the inhabitants of the locality than other officers, and it is but reasonable to hold, as it is generally held, that they are the exclusive judges of when, and in what manner, the highway should be improved. The right of the judiciary to interfere can only exist where there has been fraud or oppression, or some such wrong constituting a plain abuse of discretion.'' Nothing of the sort is shown here. See, generally, Elliott on Roads & Streets, chapter 22, especially at pages 375, 385, 391, 392, 393, 396, 397, 402, 410 and 415; 2 Dillon's Mun. Cor., §§ 752–761; *Macon* v. *Patty, supra; Daily* v. *Swope,* 47 Miss., 367; *Cammack* v. *Williams,* 27 *Ib.,* 209; *Smith* v. *Aberdeen,* 25 *Ib.,* 458.

The case chiefly relied on by appellants, *Ullman* v. *Mayor, etc.,* 20 At. Rep., p. 141, serves only to show the very unsatisfactory attitude of the supreme court of Maryland on the

general question, though the decision in the particular case may be rested on the fact that there was, in that case, no notice whatever. The whole "proceeding was, in the strictest sense of the term, purely *ex parte*." The court says: "That case, by three judges to two, overruled an earlier case (*Mayor* v. *Hopkins*, 56 Md., 1) which, in its turn, had overruled, by the same bare majority, *Mayor* v. *Scharf*, 54 Md., 499. A singular feature of *Ullman* v. *Mayor*, etc., is that it professes to rest on *Spencer* v. *Merchant*, 125 U. S., 345, but quotes from the dissenting opinion of Mr. Justice Matthews, which opinion itself quotes from *Stuart* v. *Palmer*, 74 N. Y., 183, and pronounces that irreconcilable with the very able opinion of Mr. Justice Finch in 100 N. Y., 587, which latter opinion Justice Gray, for the court, adopted."

It is further to be noted, as said in *Macon* v. *Patty*, that there is a very wide distinction between the power to impose these local assessments for the improvement of streets and the improvement of sidewalks. The latter can be maintained under the police power.

All the sidewalks in Jackson are shown to have been made at the expense of or by the owners of abutting property, and all the property owners affected by this ordinance have complied with it, save appellants.

All that is said in the ordinance about the dirt sidewalk being a public nuisance is, of course, mere thundering in the preface. It is pure surplusage. The sidewalk was no nuisance of any kind.

The statute (§§ 3011, 3012, Code 1892) is exceedingly awkward and unintelligible. Many criticisms could be indulged. The order of the board is styled "resolution" in § 3011, and "ordinance" in § 3012. It is required in § 3011 that the property owners must file their protest within "twenty days from the passage of the resolution;" and yet the resolution must be published for three weeks, and the publication will certainly not be completed within the said twenty days from

the passage of the resolution, etc. But we must so construe the law as to uphold it, if it can reasonably be done, and thus effectuate the legislative will. And we are satisfied with the construction we have placed upon it. As correctly said in *Williams* v. *Cammack*, *supra:* "It is of common occurrence that legislative acts designed for the general good work the most serious injury to the interests of individuals. There may be hardships, but they are inconveniences incident to society, and a part of the sacrifices everyone must make, in order to enjoy the greater advantages of law and government. . . They must be submitted to as the necessary action of the machinery of government, and as individual sacrifices to the general good, in order that the advantages of the social compact may be enjoyed."

<div align="right">

*Affirmed.*